Daniel G. Rollins, Referee.
“In June, 1873, there was pending before the mixed commission on. British and American Claims, then sitting at the city of Washington, in the District of Columbia, a certain claim in behalf of one Augustine It. McDonald. McDonald entered into a written agreement with the plaintiffs in this action, whereby, in consideration of services thereafter to be rendered by them in the prosecution of such claim, it was provided that they should receive a sum equal to twenty-five per centum of the amount that should be recovered—6 the payment of which sum ’ the agreement proceeds to say, ‘ is hereby made a lien upon the said claim, and upon any draft, money, or evidence of indebtedness which may be paid or issued thereon.’
“ In September, 1873, the commission awarded to McDonald, in satisfaction of his claim, the sum of $197,000.
“In August, 1874, McDonald assigned the whole of this award to one William White.
“ In the following October these plaintiffs filed, in the supreme court of the District of Columbia, a bill in equity against McDonald and White, alleging therein that McDonald was indebted to them, under the agreement aforesaid, in the sum of $49,297.50, and that they had a lien to the extent of such sum upon the award in his favor. The bill prayed, among other things, that the defendants, McDonald and White, be restrained from assigning or collecting more than three-fourths of the amount of the award in McDonald’s favor, and that a decree be entered establishing the complainants’ lien *411 upon the remaining one-fourth. Such proceedings were thereafter had that one-half part of the sum so awarded was paid into court to meet the claim and lien of these plaintiffs.
“ Of the funds thus deposited, George W. Riggs, a banker in Washington, D. C., was appointed receiver. As such receiver, pursuant to the direction of the court, he invested such funds in certain bonds of the District of Columbia, guaranteed by the United States, and payable at its treasury.
“To the plaintiffs’ bill the defendants interposed a demurrer, which was thereafter sustained. An amended complaint was met by a second demurrer, which was also sustained, and on June 24, 1875, a decree was entered dismissing the plaintiffs’ bill with costs. On the same day the plaintiffs entered an appeal from that decree to the general term of the supreme court of the District of Columbia.
“ Four days later (that is, on June 28, 1875), another decree was entered in precise conformity with the earlier one, except that its contents were supplemented by a direction to the receiver to pay to the defendants, McDonald and White, the funds in his hands belonging to the cause.
“ Pursuant to such direction, and on the day of the entry of the decree wherein it was contained, the receiver delivered to McDonald the bonds in question, but not until he had first consulted the judge holding the court in which such decree had been entered, and been by bim advised that that course was proper for him to pursue. McDonald on the same day sold and delivered the bonds to the banking firm of Riggs & Co., of which the receiver was a partner, obtaining upon such sale their then market value.
The bonds were promptly taken by Riggs & Co. to the Treasury of the United States, and were there surrendered. In their place there were issued to Riggs & *412 Co. certain new bonds, which were thereafter, in the month of December, 1875, sold and delivered to various purchasers. On July 2, Í875, these plaintiffs took an appeal to the general term of the supreme court of the District of Columbia from the aforesaid decree of June 28, 1875. On March 4,1876, that decree, as well as the earlier decree of June 24,1875, were reversed with costs. The cause was remanded to the special term, with leave to the defendants in the action to answer the complainants’ biH.
“In May, 1876, McDonald and White interposed an answer, denying the validity of the complainants’ claim. Upon the issues thus joined testimony was taken at diverse times during the years 1875 and 1876.
“In June, 1877, the complainants obtained an order from the supreme court of the District of Columbia at general term, requiring the defendants, McDonald and White, to 1 pay over to the registry of the court ’ the sum of $49,297.50, which had been paid them by the receiver. This order was disobeyed, and thereupon the complainants, in September, 1877, moved the defendants, McDonald and White, to show cause ‘ why they and each of them should not be punished for disobedience of the order as for a contempt.’ On December 8, 1877, the supreme court of the District of Columbia made a decree at general term, that ‘ the rule upon the defendants to show cause why they should not he decreed to he in, and punished as for a contempt of court, etc., be made absolute, and that the said McDonald and White be taken and deemed to be in contempt of the aforesaid order,’ etc. Such decree further provided that ‘ unless McDonald and White, within six days from the entry of this' order, and the service of a copy thereof upon their solicitors, shall in all respects comply with the said order of June 19, 1877, and pay unto the said registry of this court the sum of $49,297.50, the answer filed hy them in the cause he stricken out, and that this *413 cause proceed as if no answer therein had been interposed ; and that, until the said defendants shall comply with the said order of June 19, 1877, all proceedings on the part of said defendants in this cause be and the same are hereby perpetually stayed.’
“ On December 29, 1877, the supreme court of the District of Columbia, at general term, on motion of the complainants, and proof of non-compliance on the part of the defendants, McDonald and White, with the requirements of the decree of December 8,1877, ‘ ordered, adjudged, and decreed that the answer filed in this cause by the defendants, McDonald and White, be stricken out and removed from the files of the court, and that this cause do proceed as if no answer herein had been interposed.’
“On February 12, 1878, the supreme court of the District of Columbia, at general term, made decree as follows: ‘ The answer of defendants having been removed from the files for their contempt in refusing to obey the order of court and deposit in the registry the sum of $49,297.50, it is now ordered, adjudged, and decreed that the bill be taken pro confesso against them.’
“ On April 17, 1878, that order was made absolute by another order or decree which, after reciting material allegations in the complainants’ bill as ‘ standing without denial on the part of the defendants,’ ordered and adjudged ‘ that the complainants have a lien upon the claim of Augustine E. McDonald against the United States * * * of $197,190, and upon any draft, money, evidence of indebtedness, or proceeds thereof.’
“ The present action was commenced on April 16, 1884, one day less than six years after the entry of the decree last above mentioned.
“ It is claimed by the plaintiffs herein that Eiggs & Co. were purchasers pendente lite of the bonds on which they (the plaintiffs) had a lien; that the evidence of *414 that lien is conclusively established by the decree of the supreme court of the District of Columbia, and that their cause of action against the defendants accrued when that decree was entered, and at no earlier date.
“ The defendants on the other hand claim—
“First. That at the time of the purchase of the bonds in question by Riggs & Co. there was no Us actually pendens. Second. That the bonds were negotiable instruments transferable by mere delivery; that they were purchased by Riggs & Co. in good faith, and that the doctrine of lis pendens has here, therefore, no application. Third. That even if the plaintiffs had a lien upon the bonds in question, and if such bonds were received and were subsequently sold by the defendants with knowledge of the plaintiffs’ claim, that lien was practically extinguished at the time' of the sale, so that whatever cause of action they may have had against Riggs & Co. then accrued, that is to say,, in December, 1875, more than six years before the commencement of this action, which is, therefore, barred, as these defendants claim, by the statute of limitations. Fourth. That the supreme court of the District of Columbia exceeded its jurisdiction in making the aforesaid decree of April 17, 1878; that such decree is wholly void, and that, as it is the sole foundation of the plaintiffs’ claim, the defendants are entitled to judgment.
“ First. In support of the first of these four propositions urged in defendants’ behalf, it is claimed that upon the entry of the decree of June 24, 1875, dismissing plaintiffs’ bill, the Us theretofore pendens utterly ceased so to be; that this decree of June 24 was vacated by the decree of June 28, from which no appeal was taken until July 2, four days after the purchase of the bonds by the defendants, and that, therefore, no lis was pending at the time such purchase was made.
“ These two decrees of June 24 and June 28 were both before the general term of the supreme court of the *415 District of Columbia, and were both reversed by its decree of March 4, 1876 ; they are both referred to by the Supreme Court of the United States in Hovey v. McDonald, 109 U. 8., 150, and their relation to each other is there commented upon. At page 158, the judge, pronouncing the opinion of the court, says: e The correction of the form of the decree ’ [of June 24th] ‘ by adding the direction to the receiver to pay over the money in his hands to the defendants was a thing of course. It was merely expressing the legal effect and consequences of the decree. It was an amendment which the court below was competent to make notwithstanding the appeal.’
“ The decree of June 28 seems to have been entered without notice to the complainants. Up to the time of its entry they had complied with all the requirements of the law necessary to give them a status as litigants in the pending cause. In the absence of a well-settled law or practice that would make such a finding necessary, I cannot hold that the entry of the supplementary or amendatory decree had the effect, which defendants’ counsel claim that it produced, of extinguishing such rights as complainants may theretofore have had under the doctrine of lis pendens. The decree of June 24 is indorsed, ‘ Decree sustaining demurrer and dismissing bill;’ that of June 28 is indorsed, iOrder discharging receiver.’ These indorsements are not without significance as in some degree interpretative of the intended effect of the decrees in question, and their true significance. While there are some technical difficulties in upholding the plaintiffs’ claim that the bonds were sold pendente lite, I have finally reached that conclusion.
“Second. Were the bonds here in question negotiable instruments ? Each bond was in form a certificate to the effect that the District of Columbia was indebted unto a person therein named, or his ‘ assigns,’ in a specified sum, payable at a specified date at the *416 Treasury of the United States, with interest semiannually ; the certificate declares that the issuance of the bond is authorized by an act of Congress, which pledges the faith of the United States that the United States» will provide, by certain specified means, the revenues necessary to pay the interest on the bond and to create a sinking fund for paying the principal at maturity. The register of the treasury certifies on each of these bonds that it has been registered in the office of such register in accordance with the provisions of the aforesaid act. On the back of the bonds there is a blank form of assignment, for the authorization of a transfer of the bond on the books in the office of the register, followed by a blank form of acknowledgment, which is in turn followed by a 4 note ’ explaining how the assignment should he executed and acknowledged in case such execution and acknowledgment should not be effected at the treasury department.
“ It appears in evidence that it has long been the custom of bankers and brokers dealing in these securities to pass them from hand to hand like negotiable paper, when properly indorsed, with an assignment in blank, so as to permit the registered holder to insert. at his pleasure the name of any person to whom he wishes the bonds to be transferred. The Supreme Court of the United States held in County of Wilson v. National Bank, 103 U. S., 776, that ‘ in order to make a promissory note or other obligation for the absolute payment of a sum certain on a certain day negotiable, it is not essential that it should in terms be payable to “ bearer ” or “ order.” Any other equivalent expression, demonstrating the intention to make it negotiable, would be of equal force and validity.’ In White v. Vermont & Massachussetts R. R. Co. 21 How., 575, the same court also enunciated the rule that bonds which 'are intended by the obligor to be negotiable must be so regarded. Now, can it be fairly said that the maker of *417 these bonds has indicated on their face an intention to j give them the character of negotiable instruments ? Bonds of the United States are issued in two forms. Some of them are registered on the books of the treasury, and interest thereon is payable only to the per-1 son in whose name the registration is made, or to some other person to whom has been made a duly registered assignment. Bonds issued in the other form are payable to bearer, and the amounts of interest thereon, as they severally fall due, are indicated by coupons that may be detached at the pleasure of the holder. It was contended in Mechanics’ Bank v. New York & New Haven R. R. Co., 13 N. Y., 599, that certificates of stock in the defendant-corporation were to be regarded as negotiable instruments. In delivering the opinion of the Court of Appeals, Comstock, J., said (p. 623):
(Aside from the absence of any language of these certificates which can impart to them a negotiable character, both the laws of the corporation and the certificates themselves contain special restrictions which seem to me to put this question at rest. I do not suppose that a corporation, without something very extraordinary in its charter, can place such restraints upon the sale of its stock that the individual holder may not transfer as good a title in equity as he himself possesses, by any mode of assurance good upon general principles of law. But if' a natural person has an undoubted right so to express the terms of his obligation that it shall not be negotiable in the commercial sense, or in any sense which can give to the purchaser a title superior to that of his vendor, I see no reason to doubt that corporations possess the same right. Has the defendant so expressed itself in these certificates of stock? I think it has. It has distinctly declared, both in its bylaws and on the face of the certificates, that shares can be transferred only on the books and on the surrender of the evidence of the previous owner’s title.’
*418 The fact that the company made the shares transferable only on its books, and on the surrender of the previous owner’s title, seems to be regarded by our Court of Appeals as conclusive of its intention that the shares should not be negotiable.
“ In view of the fact that the bonds here in question contain a certificate of registration in the office of the register of the treasury, and prescribe the form of assignment by which they may be transferred on the books of that office, I hold that these bonds were not intended to be, and were not and are not, negotiable.
“ Third. Is the‘plaintiffs’ right of action barred by the statute of limitations ?
“ This is the second trial of this suit. It was first tried before Hon. Edward Patterson, now a justice of the supreme court, as referee.
“ He found that the action was of such a character as to fall within the six-year limitation of the statute, and that the cause of action accrued more than six years before suit was brought.
“And accordingly he gave judgment dismissing the complaint. Upon appeal to the general term of the Superior Court this j uclgment was affirmed. The opinion of Judge Ingraham in favor of affirmance was concurred in by Judges Sedgwick and Freedman. The judgment was subsequently reversed by the Court of Appeals upon the ground that the plaintiffs’ right of action was not complete against the defendants until April 17, 1878, when the decree pro confesso was entered against McDonald and White, and that, therefore, the plaintiffs’ action was not barred by the statute of limitations. The prevailing opinion in the Court of Appeals was written by Bradley, J., with whom concurred Judges Potter, Van, and Parker. Haight, J., wrote a dissenting opinion, and favored affirmance of the judgment below upon the ground that the cause of action .arose at the time of the sale of the bonds by Biggs &• *419 Co. Judges Follett and Brown concurred in this dissent. It thus appears that of eleven judges who have heretofore passed upon this question, seven have found that the action is barred by the statute of limitations, and four have found that it is not. Those four, however, constituted a majority of one of the divisions of our Court of Appeals which pronounced the judgment of reversal, and of course, therefore, their view must now prevail unless there is some essential variations between the facts as they appear upon the present trial and the facts which were before the Court of Appeals when it ordered the reversal of the judgment entered on Judge Patterson’s report.
“It is claimed by counsel for the defendants that there is such essential variation.
“ They argue that the basis of Judge Bradley’s conclusions was the finding of the former referee that the payment by McDonald to these plaintiffs of the sum stipulated in their agreement was ‘ to be made a lien ’ upon the claim, etc., etc., and that if the learned judge had been advised by the appeal-book of the precise terms of the agreement (as was not in fact the case) he would have taken a different view of the matter.
“ The agreement, after fixing the amount of the plaintiffs’ compensation, provides that its payment ‘ is hereby made a lien upon the said claim.’ In its decree of April 17, 1878, the supreme court of the District of Columbia refer to the lien in these words: ‘ The payment of which sum was agreed to be and made a lien on the said claim.’
“ Referee Patterson granted the plaintiffs’ third request to find at the former trial, and found that the payment of the sum agreed on as the plaintiffs’ compensation from McDonald 6 was made a lien upon the said claim and upon any draft,’ etc., etc.
“ In the course of his opinion in favor of reversing the judgment below, Judge Bradley says: 6 Plaintiffs’ *420 right to a lien existed in contract entered into before the award was made by the commission, by the terms of which the payment of their claim for services was to be made a lien upon it.’ Elsewhere he refers to the contract on which the plaintiffs rely as executory, and he then says: (The lien upon which the plaintiffs relied existed in executory contract and was cognizable in equity only until it was perfected, either by recognition or contract of McDonald, in terms making it so in presentí after performance by the plaintiff, or by decree to that effect.’ He says at a later stage of his opinion; ‘ The contract in question may be treated as an agreement to give the plaintiffs a lien dependent upon the terms and conditions of the contract, and while it attached as a lien in equity upon the award when made, it was not, by force of the contract, made a specific lien in presentí or recognizable at law until it was perfected by the decree.’
“ After careful consideration of the opinion of Judge Bradley, and of the action of the Court of Appeals upon the application of these defendants for a reargument, it seems to me that if the facts as they then appeared before the court had been precisely such as appear upon the present trial, its decision in the matter of the statute of limitations would not have been changed.
“ When Judge Bradley referred to the agreement as ‘ executory ’ he had in mind, I think, the fact that the services with which the lien was associated were to be thereafter rendered, and that unless they should be in fact rendered the lien would be inoperative. And the learned judge then proceeded to the conclusion that the plaintiffs’ lien could not become perfect until, after the services should have been in fact rendered, such lien should either be acknowledged by McDonald or recognized by decree. Acting upon that interpretation of the meaning of the decision of the Court of Appeals, I feel bound to hold that this action is not barred by the statute of limitations.
*421 “ Fourth. Does the final decree of the Supreme Court of the District of Columbia, entered on the 17th day of April, 1878, furnish sufficient support for its judgment in favor of these plaintiffs ?
“ It is claimed in their behalf that their lien is conclusively established by such decree, and that, even if the Supreme Court of the District of Columbia was clearly in error in taking the steps which led up to the making of that decree, the error is one which can only he taken advantage of in a direct proceeding for its correction, and its existence must in this collateral proceeding be wholly disregarded.
“ The testimony shows that the bill of complaint in the District of Columbia action alleged the execution of the aforesaid agreement between the plaintiffs and the defendants, and the rendering of the services called for by that agreement so as to perfect the plaintiffs5 lien. It further shows that in May, 1876, an answer was interposed by the defendants, McDonald and White, denying that the plaintiffs had rendered any services under said agreement, and alleging that the execution of that instrument had been obtained by fraud. It shows, too, that testimony had been taken in the action by both the plaintiffs and defendants, and that when the cause came upon the calendar at special term in April, 1877, it was certified to the general term, there to be heard in the first instance.
“ I have already referred in detail to various proceedings in the Supreme Court of the District of Columbia between June, 1877, when McDonald and White were orderéd to pay into the registry the sum of $49,297.50, and April, 1878, when, in disregard of the answer of McDonald and White and of the testimony that had been taken in their behalf, that court entered judgment in accordance with the prayer of the complainants. There was no adjudication, nor was there pretence of adjudication, upon the actual merits of the matters in *422 controversy, for the court had theretofore stricken the defendants’ answer from the files, and had avowedly and distinctly pursued that course by way of punishing the defendants for their contempt in refusing to obey the court’s order for the deposit of moneys in its registry.
“ Now, it is a well-settled doctrine of our Federal jurisprudence that the United States courts have no common-law jurisdiction, but such jurisdiction only as has been conferred upon them by statute. The statutory authority for punishment for contempts in those tribunals is limited to the imposition of a fine or of imprisonment. Section 17, Judiciary Act, 1789; Revised Statutes, U. S., § 725; Section 34, Act of February 21, 1871; Anderson v. Dunn, 6 Wheat., 227; Ex parte Robinson, 19 Wall., 512.
“ It seems clear that in pronouncing its decree of April 17, 1878, under the circumstances that I have already referred to, and after the striking of the defendants’ answer from the files by way of punishment for their contempt, the Supreme Court of the District of Columbia transcended its authority.
“ Is its decree for that cause void ?
“ McVeigh v. U. S., 11 Wall., 259, was decided upon the following state of facts : Certain property there in controversy had been seized by a United States marshal in 1863 and libeled for forfeiture upon the allegation that its owner had held an office of honor under the Confederate Government, and that he had in various ways given aid and comfort to the rebellion. In response to the monition which had cited all persons interested in the property, or claiming an interest, to appear and make their allegations in that behalf, the owner had appeared and had filed claim and answer. The district attorney thereafter moved that such claim, answer and appearance be stricken from the files on the ground that the claimant, as his answer disclosed, was, at the time of filing the same, 4 a resident within the city of Richmond, *423 within the Confederate lines, and a rebel.’ The motion of the district attorney was granted; a decree of condemnation of forfeiture was entered, and the property was sold. The decree was subséquently affirmed by the circuit court, and thereafter the case was taken by writ of error to the Supreme Court of the United States. Mr. Justice Swayne, delivering the unanimous opinion of the court, 11 Wallace, 259, said : (In our judgment the district court committed a serious error in ordering the claim and answer to be stricken from the files. As we are unanimous in this conclusion, our opinion will be confined to that subject. The order, in effect, denied the respondent a hearing. It is alleged that he was in the position of an alien enemy, and hence could have no locus standi in that forum. If assailed there he could defend there. The liability and the right are inseparable. A different result would be a blot upon our jurisprudence and civilization. We cannot hesitate or doubt on the subject. It would be contrary to the first principles of the social compact and of the right administration of justice.’
“ At a later day the validity of the same decree was brought collaterally in question in the case of Windsor v. McVeigh, 93 U. S., 274, which was an action of ejectment. In delivering the opinion of the Supreme Court, Mr. Justice Field, after citing the language above quoted from the opinion of his associate justice, said : 6 The principle stated in this terse language lies at the foundation of all well-ordered systems of jurisprudence. Wherever one is assailed in his person or his property there he may defend, for the liability and the right are inseparable. This is a principle of natural justice, recognized as such by the common intelligence and conscience of all nations. A sentence of a court pronounced against a party without hearing him, or giving him an opportunity to be heard, is not a judicial determination of his rights, and is not entitled to respect *424 in any other tribunal. Until notice is given the court has no jurisdiction in any case to proceed to judgment, whatever its authority may be by the law of its organization over the subject-matter. But notice is only for the purpose of affording the party an opportunity of being heard upon the claim or charges made; it is a summons to him to appear and speak, if he has anything to say why the judgment sought should not be rendered. A denial to a party of the benefit of a notice would be in effect to deny that he is entitled to notice at all, and the sham and deceptive proceeding had better be omitted altogether. It would be like saying to a party, “ Appear, and you shall be heard,” and when he has appeared, saying : “ Your appearance shall not be recognized, and you shall not he heard.” In the present case the district court not only in effect said this, but immediately added a decree of condemnation, reciting that the default of all persons had been duly entered. It is difficult to speak of a decree thus entered with moderation ; it was in fact a mere arbitrary edict, clothed with the form of a judicial sentence. The law is and always has been that whenever notice or citation is required the party cited has a right to appear and to be heard ; and when the latter is denied, the former is ineffectual for any purpose. The denial to a party in such a case of the right to appear is, in legal effect, a recall of the citation to him.....The position of the defendants’ counsel is that, as the proceeding for the confiscation of the property was one in rem, the court by seizure of the property acquired jurisdiction to determine its liability to forfeiture, and consequently had a right to decide all questions subsequently arising in the progress, of the cause, and that its decree, however erroneous, cannot, therefore, be collaterally assailed.....The doctrine invoked by counsel that where a court has once acquired jurisdiction it has a right to decide every question which arises in a cause, and that its judgment, however erro *425 neons, cannot be collaterally assailed, is undoubtedly correct as a general proposition, but, like all general propositions, is subject to many qualifications in its application.
. . . . Though the court may possess jurisdiction of a cause, of the subject matter, and of the parties, it is still limited in its modes of procedure, and in the extent and character of its judgments; it must act judicially in all things, and cannot then transcend the power conferred by law. If, for instance, the action be upon a money demand, the court, notwithstanding its complete jurisdiction over the subject and parties, has no power to pass judgment of imprisonment upon the defendant. If the action be for a libel or personal tort, the court cannot order in the case a specific performance of a contract.....The judgments mentioned, given in the cases supposed, would not be merely erroneous; they would be absolutely void, because the court in rendering them would transcend the limits of its authority. .... So a departure from established modes of procedure will often render a judgment void; thus the sentence of a person charged with felony upon conviction by the court without the intervention of a jury would be invalid for any purpose.....The doctrine stated by counsel is only correct when the court proceeds, after acquiring jurisdiction of the cause, according to the established modes governing the class to which the case belongs, and does not transcend, in the extent and character of its judgment, the law which is applicable to it.....It was not within the power of the jurisdiction of the district court to proceed with the case so as to affect the rights of the owner after his appearance had been stricken out and the benefit of the citation to him thus denied. For jurisdiction is the right to hear and determine; not to determine without hearing.’ “ Mr. Justice Wood, delivering the opinion of the Supreme Court of the United States in United States v. Walker, 109 U. S., 258, said: ‘ Although a court may *426 have jurisdiction over the parties and the subject-matter, yet if it makes a decree which is not within the powers granted to it by the law of its organization, its decree is void.’
Thomas M. Wheeler, attorney, and H. B. Titus of counsel, for appellants.
“ In the case just cited, the Supreme Court upheld a collateral attack upon a decree of the Supreme Court of the District of Columbia. That court was authorized to hold terms for the transaction of orphans’ court business; it was proceeding with the settlement of the account of an administratrix of a decedent’s estate. Over that account, and over the administratrix herself, the court had unquestioned jurisdiction. The decedent had been administrator of another estate, not fully administered at the time of his death. An administrator de bonis non of such other estate had been appointed, and the decree directed the accounting administratrix to pay over to such administrator de bonis non a certain sum of money. The Supreme Court of the United States held that the administratrix de bonis non was not entitled to recover from the accounting administratrix; that the supreme court of the district had exceeded its jurisdiction in making the order, and that the order was therefore void. This course was taken, not in a direct proceeding to review the decree, but in an action at law on the administrator’s bond.
“ Upon these authorities, and numerous others to which I have been referred by counsel, I hold that the validity of decree of the Supreme Court of the District of Columbia may properly be inquired into in this action ; and upon careful consideration of all the evidence, I am of the opinion that such decree is invalid for want of jurisdiction of the court wherein it was entered to enter the same; and because of this invalidity I find that the defendants herein are entitled to judgment.”
R. D. Harris, attorney, and William G. Choate and John Selden of counsel, for respondents.
Per Curiam.
Upon the case as now presented the right of the plaintiff to any relief whatever rests upon the alleged decree of the Supreme Court of the District of Columbia entered on the 17th day of April, 1878. The referee found that the decree was invalid for want of jurisdiction of the court wherein it was entered to enter the same.
The question of validity or invalidity of the decree must be determined by the laws of the United States, and by the interpretation of those laws by the Supreme Court of the United States. Whether a decree of the same character made under the same circumstances by a court of the state of New York, or of any other state, would or would not be valid, is an immaterial question, if under the decisions of the Supreme Court of the United States the decree was one which a federal court was wholly incompetent to make. Upon a careful examination of all that has been cited upon this point by both parties, we are of the opinion that the learned referee reached the right conclusion.
The judgment should be affirmed, with costs, upon that part of the opinion of the referee which relates to the question of jurisdiction.