## UNITED STATES to the use of WILSON, Administrator, v. WALKER.

IN ERROR TO THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

Argued October 26th, 29th, 1883.—Decided November 19th, 1883.

*District of Columbia—Administrator—Surety.*

1. When an administrator duly appointed in the District of Columbia, is removed, and an administrator *de bonis non* appointed in his place, the administrator *de bonis non* is not entitled to demand of the administrator so removed the proceeds of a claim against the United States due the intestate and collected by the former administrator ; and cannot maintain suit against a surety of the former administrator to recover damages for failure by the former administrator to pay such sum to the administrator *de bonis non.*

2. A decree by the Supreme Court of the District of Columbia, directing an administrator who has been removed to pay over to an administrator *de bonis non* appointed in his place a sum collected by the former from the United States for a claim due to the intestate, is void for want of jurisdiction, and furnishes no ground for maintaining an action against a surety of the former administrator for failure of that administrator to comply with the decree.

This was an action at law on an administrator's bond. The bond was made by Charlotte L. Ames and Cunningham Hazlett, as administrators of the estate of Horatio L. Ames, deceased, with Frederick P. Sawyer and the defendant in error, David Walker, sureties. It was in a penalty of $120,000, was payable to the United States, and was subject to the condition that the said Ames and Hazlett should well and truly perform the office of administrators of Horatio Ames, deceased, and discharge the duties of them required as such without any injury to any person interested in the faithful performance of said office. Hazlett died at a date not given, and after his death and until January 9th, 1875, Charlotte L. Ames continued to be

sole administratrix, and on the day last named she was removed from said office by order of a justice of the Supreme Court of the District of Columbia, and on the same day Nathaniel Wilson was appointed administrator *de bonis non.* On January 22d, 1876, Charlotte L. Ames, in the settlement of her account as administratrix, was directed by the decree of a justice of said supreme court, holding a special term for the transaction of orphans' court business, to pay over to said Nathaniel Wilson, administrator *de bonis non* of the estate of Horatio Ames, deceased, on or before February 8th, 1876, the sum of $34,876.75. She failing to pay this sum or any part of it, Wilson, administrator *de bonis non,* on April 12th, 1876, brought this suit in the name of the United States for his use on the bond above mentioned against Charlotte L. Ames, David Walker, and the administrators of the estate of Frederick P. Sawyer, who, on August 31st, 1875, had departed this life. The suit was afterwards discontinued as to Charlotte L. Ames and the administrators of Sawyer, and was prosecuted against David Walker alone.

The declaration contained two counts. The first count set out the obligation of the bond without stating the condition. The second count stated the obligation of the bond and averred the condition as above set forth, and assigned as breach the failure of Charlotte L. Ames to pay over to Wilson, the administrator *de bonis non,* the said sum of $34,876.75.

The defendant pleaded to the first count the condition of the bond and its performance.

To the second count he pleaded, first, " that by the condition of the bond the defendant, as surety, became liable to the plaintiff, as administrator *de bonis non,* only for such of the assets of the estate as had not been converted into money by the said administrators or the survivor, and the defendant says that the assets of said estate consisted wholly of a claim or chose in action owing by the government of the United States, and that the money claimed in this action is the proceeds of said claim or chose in action collected from the government and thereby converted into money." etc. The second plea to the second count averred that the defendant, as surety as aforesaid,

was liable only for such assets of said estate as had not been administered by said administrators or the survivor, and that the money claimed in this action is for assets which had been administered before the removal of said surviving administrator from office and the appointment of plaintiff. Both these pleas also aver that defendant was not a party to the proceeding in which the order to pay over was made and was not served with process therein, nor did he voluntarily appear.

In his replication to the first plea (the plea of condition performed) the plaintiff set out three breaches, each of them consisting in the failure of the administratrix to pay over the money to her successor, in compliance with an order of the court.

The plaintiff demurred to the remaining pleas. The defendant demurred to the replication to the first plea.

Issue was joined on both demurrers, and the court, in general term, overruled the plaintiff's demurrer, sustained that filed by the defendant, and entered judgment for the defendant. The plaintiff thereupon sued out this writ of error.

*Mr. A. S. Worthington* for the plaintiff.
*Mr. W. D. Davidge* for the defendant.

Mr. Justice Woods delivered the opinion of the court.

The first question presented by the record is, whether it was competent for the administrator *de bonis non* of the estate of Ames to sue on the bond of the principal administrator to recover money collected by him from the United States and not paid over or accounted for.

It is well settled at common law that " the title of an administrator *de bonis non* extends only to the goods and personal estate, such as leases for years, household goods, &c., which remain in specie and were not administered by the first executor or administrator, as also to all debts due and owing to the testator or intestate." Bacon's Abr., Title Executors and Administrators, B 2, 2, citing *Packman's Case*, 6 Coke, 293 (Part VI. 1, 8 *b*).

In illustration of this rule the same authority says :

" It is holden that if an executor receives money in right of

the testator, and lays it up by itself and dies intestate, that this money shall go to the administrator *de bonis non*, being as easily distinguished as part of the testator's effects, as goods *in specie*.

"But if A dies intestate, and his son takes out administration to him and receives part of a debt, being rent arrear to the intestate, and accepts a promissory note for the residue, and then dies intestate, this acceptance of the note is such an alteration of the property as vests it in the son; and, therefore, on his death, it shall go on to his administrator, and not to the administrator *de bonis non*."

An administrator *de bonis non* derives his title from the deceased, and not from the former executor or administrator. To him is committed only the administration of the goods, chattels, and credits of the deceased which have not been administered. He is entitled to all the goods and personal estate which remain in specie. Money received by the former executor or administrator, in his character as such, and kept by itself, will be so regarded, but if mixed with the administrator's own money it is considered as connected, or as, technically speaking, "administered." *Beall* v. *New Mexico*, 16 Wall. 535; *Coleman* v. *M. Murdo*, 5 Randolph, 51; *Bank of Penn.* v. *Haldeman*, 1 Penrose & Watts, 161; *Potts* v. *Smith*, 3 Rawle, 361; *Bell* v. *Speight*, 11 Humph. 451; *Swink* v. *Snodgrass*, 17 Ala. 653; *Slaughter* v. *Fronau*, 5 Mor. 19; *Gamble* v. *Hamilton*, 7 Mo. 469.

In the case of *Beall* v. *New Mexico*, 16 Wall. 535, it was said by Mr. Justice Bradley, speaking for this court, that "by the English law, as administered by the ecclesiastical courts, the administrator who is displaced, or the representative of a deceased administrator or executor intestate, are required to account directly to the persons beneficially interested in the estate—distributees, next of kin, or creditors—and the accounting may be made or enforced in the probate court, which is the proper court to supervise the conduct of administrators and executors. To the administrator *de bonis non* is committed only the administration of the goods, chattels, and credits of the deceased which have not been administered."

Such was the law of Maryland before the organization of the District of Columbia, and such it continues to be in the District, unless changed by statute. In the case of *Hagthorp* v. *Hook's Adm'r*, 1 Gill & Johnson, 270, it was held by the Court of Appeals of Maryland that the authority conferred by the letters of administration *de bonis non* issued under the act of 1798, No. 101, ch. 14, sec. 2, was "to administer all things described in the act of assembly as assets not converted into money, and not distributed, delivered, or retained by the former executor or administrator under the direction of the orphans' court. Such an administrator can only sue for those goods, chattels, and credits which his letters authorize him to administer."

To the same effect are the cases of *Sibley* v. *Williams*, 3 Gill & Johnson, 52; *Hagthorp* v. *Neale*, 7 Gill & Johnson, 13; and *Lemmon* v. *Hill*, 20 Md. 171.

In the case of *Ennis* v. *Smith*, 14 How. 400, it was said by this court:

"We understand by the laws of Maryland, as they stood when Congress assumed jurisdiction over the District of Columbia, that the property of a deceased person was considered to be administered whenever it was sold or converted into money by the administrator and executor, or in any respect changed from the condition in which the deceased left it. It did not go to the administrator *de bonis non* unless, on the death of the executor or administrator, it remained in specie or was the same then that it had been when it came to his hands. When the assets have been changed, it is said in Maryland that they have been administered."

But counsel for appellant contend that this rule applies only to the case where an executor or administrator has died, and not to the case where he had been removed; that while the words "not administered," in the commission of an administrator *de bonis non*, still frequently mean not changed in form, yet, as applied to an administrator *de bonis non* in place of a living administrator, they have come to mean almost invariably not fully and legally administered; and it is said that this dis-

tinction appears in the laws of Maryland in force before the organization of the District of Columbia, and continuing in force until the passage of the act of February 20th, 1846, "to enlarge the powers of the several orphans' courts held in and for the District of Columbia." 9 Stat. 4.

In support of this view we are referred to chapter 101 of the Maryland act of 1798, 2 Kilty's Laws, by which it is provided in sub-chapter 5, sec. 5, that where letters testamentary have been granted in a case of the discovery of a will, and consequent revocation of letters of administration, it shall be the duty of the administrators to file their accounts and to "deliver to the executor, on demand, all the goods, chattels, and personal estate in their possession belonging to the deceased," and on failure their administration bonds shall be liable to be put in suit; and to sub-chapter 6, sec. 13, of the same statute, where it is provided that if an executor or administrator shall not file his inventory within thirty days, his letters may be revoked and other letters granted, and thereupon the power of such executor or administrator shall cease, and he shall deliver up to the person obtaining such letters all the property of the deceased in his hands.

These statutes do not tend to support the distinction relied on by plaintiff in error; for, as is well established by the authorities we have cited, the goods and chattels, personal estate and property of the deceased are such only as remain unchanged and in specie. When a debt due the deceased is collected or a chattel of his estate is sold, the money received becomes the property of the administrator, and he is accountable therefor to those beneficially interested in the estate, and, under the acts referred to, the removed executor or administrator was not bound to turn it over to his successor.

It may be conceded that the words unadministered assets, as used in statutes, have sometimes been construed to include the proceeds of assets sold or collected and not accounted for or paid over; and that an administrator *de bonis non* might call a removed administrator to account for such proceeds. But whatever may have been the rule elsewhere upon this question, we think that by the provisions of the act of Congress

of February 20th, 1846, to enlarge the power of the several orphans' courts held in and for the District of Columbia, 9 Stat. 4, reproduced in sections 975, 976, 977, 978 of the Revised Statutes relating to the District of Columbia, the common law is not changed, and that the statute applies the same rule to the case of a removed as has been applied to the case of a deceased executor or administrator.

Section 974 provides that if the security on the bond of an executor or administrator shall become, for any cause, insufficient, the court may order him to give further security. Section 975 provides that if he fails to comply with such order the court may remove him, and appoint a new administrator.

Section 976 is as follows:

" The court shall further have power to order and require any assets or estate of the decedent which may remain unadministered to be delivered to the newly appointed administrator *de bonis non*, and to enforce a compliance with such order by fine and attachment or any other legal process."

We think the meaning of this act is plain. When it was passed, the words " assets or estate of the decedent which remain unadministered," had a uniform and well settled meaning in the statute law of Maryland, in force in the District of Columbia, and that meaning, as we have seen, was assets or estate remaining in specie and unchanged in form. The act of 1846 must be construed as using the words in this well settled signification, unless the contrary appears. But there is not a word in the act of 1846 to indicate that Congress intended to give any new or different meaning to these words.

Independently of this consideration, the meaning of the law is not doubtful. It would be an unnatural construction to say that the law required the removed executor or administrator to deliver to his successor assets which had been converted or wasted, and which no longer existed, and when there remained only a right to sue for their value. When assets have been turned into money by an executor or administrator and the money mingled with his own, the assets have ceased to exist as assets or estate of the decedent.

It is the assets and estate of the decedent that are to be delivered. The authorities we have referred to all concur in the proposition that where personal property of an estate under administration has been sold or a debt collected, the proceeds are not property of the decedent, but are the individual property of the executor or administrator, and he is liable to an action for not accounting.

When assets have been turned into money by an executor or administrator, he is bound to account, not for the identical money received, but for an equal amount; and if he fails to account for and pay over this equal amount he is liable in damages, which are measured by the proceeds of the assets so turned into money. The statute surely cannot mean that the removed administrator must "deliver" damages to his successor.

Our conclusion is therefore that the act of February 20th, 1846, does not apply a different rule to the case of an administrator *de bonis non* succeeding a removed administrator, from that applied to one succeeding a deceased administrator, and that no action lies on the bond sued on in this case in favor of the administrator *de bonis non* to recover money collected by Mrs. Ames from the United States on a claim belonging to the estate of the decedent. On the contrary, the defendant, as surety on the bond of the removed administrator, is liable only at the suit of creditors, distributees, and legatees entitled to the funds.

The next point taken by the plaintiff in error is that the decree of the justice of the Supreme Court of the District, directing the administratrix to pay over the fund to her successor, was conclusive in this suit.

We are of opinion that in making the order referred to, the Supreme Court of the District exceeded its jurisdiction, and that its order is for that reason void. Its authority, and its sole authority for making the order, is to be found in section 976, above referred to, of the Revised Statutes relating to the District of Columbia:

"The court shall have further power to order and require any

assets or estate of the decedent which may remain unadministered to be delivered to the newly appointed administrator *de bonis non.*"

It appears from the pleadings in the case that the money ordered to be paid was the proceeds of a debt due the decedent which his administratrix had collected. It was not, therefore, as we have seen, assets or estate of the decedent. It was the property of the removed administrator. The court was therefore without power to direct the payment of the money to the administrator *de bonis non.* Although a court may have jurisdiction over the parties and the subject-matter, yet if it makes a decree which is not within the powers granted to it by the law of its organization, its decree is void. The limitation was well expressed by Mr. Justice Swayne, in *Cornett* v. *Williams,* 20 Wall. 226, when he said :

"The jurisdiction having attached in this case, everything done, within the power of that jurisdiction, when collaterally questioned, is held conclusive of the rights of the parties, unless impeached for fraud."

The case of *Bigelow* v. *Forrest,* 9 Wall. 339, is in point. It was an action of ejectment. Bigelow, who was defendant in the court below, relied for title on a sale made under a decree of the United States District Court rendered in a proceeding for the confiscation of the premises sued for under the act of July 17th, 1862. Referring to this decree, Mr. Justice Strong, speaking for this court said :

"Doubtless a decree of a court having jurisdiction to make the decree cannot be collaterally impeached, but under the act of Congress the district court had no power to order a sale which should confer on the purchaser rights outlasting the life of French Forrest."

And the judgment of the court was that so much of the decree of the district court as was in excess of its powers was void.

In *Ex parte Lange,* 18 Wall. 163, Mr. Justice Miller deliver

ing the opinion of the court, after stating that the circuit court had exceeded its authority in pronouncing sentence upon Lange, and that its judgment was therefore void, said:

"It is no answer to this to say that the court had jurisdiction of the person of the prisoner and of the offence under the statute. It by no means follows that these two facts make valid, however erroneous it may be, any judgment the court may render in such case."

In the case of *Windsor* v. *McVeigh*, 93 U. S. 274, Mr. Justice Field, after a review of the cases bearing upon this subject, announces their result as follows:

"The doctrine invoked by counsel, that when a court has once acquired jurisdiction it has a right to decide every question which arises in the case, and its judgment, however erroneous, cannot be collaterally assailed, is undoubtedly correct as a general proposition, but is subject to many qualifications in its application. It is only correct when the court proceeds, after acquiring jurisdiction of the cause, according to established modes governing the class to which the case belongs, and does not transcend in the extent or character of its judgment the law which is applicable to it."

In this case the statute gave the court power, on the removal of an executor or administrator, to order the assets of the decedent, which might remain unadministered, to be delivered to the administrator *de bonis non*. The court made an order directing the delivery of the proceeds of administered assets. This was beyond the power conferred by the statute, and not within the jurisdiction of the court. The order was, therefore, void.

The result of these views is, that

*The judgment of the Supreme Court of the District of Columbia must be affirmed.*