## IN RE ESTATE OF McKNIGHT.

STATUTORY CONSTRUCTION ; ADMINISTRATION ; ORPHANS' COURT.

In that provision of the Testamentary Act of Maryland of 1798, in force in this District, providing that if an administrator fails to give counter-security to his surety when required to do so, the court may order the "property" remaining in his hands to be delivered up to the surety, the expression *property* includes *money*.

No. 5.   Submitted June 6, 1893.—Decided September 5, 1893.

HEARING on appeal from an order of the Supreme Court of the District of Columbia, held for Orphans' Court business. *Affirmed.*

STATEMENT of the case by Mr. Justice MORRIS :

This case comes up on appeal from an order of the special term of the Supreme Court of the District of Columbia, held for Orphans' Court business, whereby an administrator was required, on the petition of his surety, to bring into court certain money of the estate of his decedent found to be in his hands.

It appears from the record that on November 12, 1886, one Vincent L. Ourdan was appointed administrator with the will annexed of Mary A. McKnight, and gave bond for the faithful performance of his duty as such, with Emma J. McKnight and another, as sureties.   On December 17, 1886, the surety, Emma J. McKnight, for reasons deemed satisfactory by her and apparently found to be satisfactory by the court, filed her petition under the Testamentary Act of Maryland, of 1798, in force in the District of Columbia (Act of 1798, Chap. 101, Subch. 14, Sec. 11) asking to be released from her suretyship, or that the administrator be required to give counter security.   On April 1, 1887, the court required the administrator to give the counter security demanded; and on the administrator's failure so to do, an order was made, on April 22, 1887, requiring him to deliver

to the surety the property remaining in his hands as administrator, to be by her administered according to law. This order also, the administrator failed to obey.

After various other proceedings not necessary to be here enumerated, including among them a reference to the auditor and a report by him unfavorable to the administrator, the court, on August 1, 1888, made an order, requiring the administrator to deposit with the register of the court, the sum of $293.79, found to be in his hands, of the property of the deceased and the sum of $42.75, for costs of court. From this order the administrator prosecutes the present appeal.

*Mr. A. A. Birney* and *Mr. T. W. Birney* for the appellant:

The statutes nowhere confer jurisdiction upon the Orphans' Court to pass orders such as that appealed from. It is expressly enacted that "The said Orphans' Court shall not under any pretext of incidental power or constructive authority exercise any jurisdiction whatever not expressly given by this act or some other law." Kilty's Stat., Act 1798, Ch. 101, Subch. 15. This prohibition has always been respected in Maryland. *Townshend, Admr.,* v. *Brooke,* 9 Gill, 90; *Connor* v. *Ogle,* 4 Md. Ch. 425, 451, 452; *State, use, etc.,* v. *Warren,* 28 Md., at 355; *Bowie* v. *Ghiselin,* 30 Md., 553; *Norment* v. *Brydon,* 44 Id. The very point in question was decided in Maryland in 1843, and it was held that the Act of 1798, Ch. 101, conferred jurisdiction to coerce the delivery of property, or payment of money by the representative of an administrator to an administrator *d. b. n.,* only in case the property or money *belonged specifically to the deceased while alive. Gardner et al., Ex'rs* v. *Simmes,* 1 Gill, 425. The Supreme Court has held to the same effect. *U. S., use, etc.,* v. *Walker,* 109 U. S., 258. So while the court might lawfully order, as it did, that property *of the decedent* remaining in the administrator's hands should be delivered by him to his surety, it had no right to order him to bring in money which had come to him from

sales of such property. Such property was fully administered, and as to its proceeds the administrator was a mere debtor to the estate.    109 U. S., 258, *U. S., use, etc.,* v. *Walker.*    The right to order administrators to bring money into court was first granted in Maryland by the Act of 1831, Ch. 315.    Mayer's Dig., page 682; Test. Law of Md., page 23 ; *Bowie* v. *Ghiselin,* 30 Md., 553.

*Mr. Henry E. Davis* for the appellees :

The contention that the money in dispute was administered assets has no place in the case.    The question of ordering the delivery over of administered assets can arise only in the case of an administrator *de bonis non.*    But such is not this case; it is a case of counter security ordered without the removal of the administrator.    The very section of the law invoked as the foundation for the proceedings herein, provides in terms for the continuance in his trust of the administrator, and no order in the case purports to have removed him.    The law has been changed in Maryland since the assumption by Congress of authority over the District of Columbia.    It was provided by the act of 1829, c. 216, sec. 1, that on the failure of the administrator to give counter security, *not* that he should deliver the property of the decedent in his hands to the complaining surety, *but,* that his letters should be revoked; and even then that he should pay over to the new administrator everything, including money due by him as administrator.    Hink., Test. Law, sec. 655. Nor is the case in anywise affected by secs. 974-978, R. S. D. C.    Those sections relate exclusively to cases in which the court may require, *not* counter security to a surety, *but,* additional security for the administration; in default of giving which the administrator may be removed and an administrator *d. b. n.* appointed ; to whom, as the law says in terms, only " unadministered " assets are to be delivered over. Sec. 976.

The contention of the appellant that the administrator cannot be required to deliver over money, the proceeds of prop-

erty of the decedent, amounts to this: An administrator having in his hands property of his decedent may convert it into money. After such conversion the surety may conceive himself in danger and demand counter security. The court may order such counter security, failing the giving of which the court may order unadministered assets only (which would not include such money), to be delivered over.

This would leave the administrator in control of the money. And what would be the surety's remedy? At the most, to recover from himself one-half of the wasted assets. The law will work out no such absurdity.

Mr. Justice MORRIS delivered the opinion of the Court:

The question raised by the appeal is, whether the special term of the Supreme Court of the District of Columbia, held for orphans' court business, has jurisdiction to order an administrator to bring into court, or to pay over to a surety, money realized by him from the sale of property of the decedent and now in his hands as assets of the estate of said decedent. The question of the ultimate disposition of the fund is not before us.

The Testamentary Act of 1798, Subch. 14, Section 11, provides that, if upon the petition of a surety, an administrator fails to give counter security, when required so to do, the court may order the *property* remaining in the hands of such administrator, to be delivered up to such surety, and may enforce its order by appropriate process. The contention of the administrator here is, that, while the court may order property, other than money, the proceeds of sale of specific property, to be so delivered up, it is without jurisdiction to order the delivery to a surety, or into the registry of the court for the benefit of the surety, of money which is the proceeds of sale of property. And it is argued on his behalf that money so in his hands is technically *administered;* and that he cannot be required to pay it over, if he refuses so to do, except through the processes of an ordinary suit at law at the instance of creditors or distributees or legatees claim-

ing to be entitled to it. It is claimed that there is a distinction in this connection between money and property; that, while the court may order property not converted into money, and therefore remaining unadministered, to be delivered up to a surety, it may not order money to be so delivered, which is the proceeds of sale of property; that the jurisdiction of the orphans' court is not to be presumed to extend to such control of money, which is administered assets, in view of the express prohibition of the Testamentary Act (Ch. 101, Subch. 15) against the exercise of any authority by that court " under the pretext of incidental power or constructive authority "; and that this very question has already been adjudicated both by the courts of Maryland and the Supreme Court of the United States.

In the case of *United States* v. *Walker, use of Wilson,* 109 U. S., 258, the Supreme Court of the United States, by Mr. Justice Woods, said:

"An administrator *de bonis non* derives his title from the deceased, and not from the former executor or administrator. To him is committed only the administration of the goods, chattels and credits of the deceased which have not been administered. He is entitled to all the goods and personal estate which remain in specie. Money recovered by the former executor or administrator, in his character as such, and kept by itself will be so regarded; but, if mixed with the administrator's own money, it is considered as connected, or as, technically speaking, *administered.* . . . The goods, chattels, personal estate and property of the deceased are such only as remain unchanged and in specie. When a debt due to the deceased is collected or a chattel of his estate is sold, the money received becomes the property of the administrator, and he is accountable therefor to those beneficially interested in the estate, and under the acts referred to the removed executor or administrator was not bound to turn it over to his successors. . . . When assets have been turned into money by an executor or administrator and the money mingled with his own, the assets have ceased to exist as assets or estate of the deceased."

This is the adjudication by the Supreme Court of the United States relied on by the appellant. To the same effect precisely, and of the same character, was the case of *Gardner* v. *Simmes*, 1 Gill, 425, in which the Court of Appeals of the State of Maryland held precisely the same doctrine.

But it must be remembered that both of these cases were suits by an administrator *de bonis non* against a previously removed executor or administrator, or the representatives of a deceased executor or administrator; and both were based upon the provisions of the Testamentary Act of 1798, Chap. 101, Subch. 14, Sec. 2, whereby it is specifically provided that the authority of an administrator *de bonis non* " shall be to administer all things herein described as assets, *not converted into money*, and not distributed or delivered, or retained by the former executor or administrator, under the court's direction." In other words, the administrator *de bonis non* takes up the administration simply where his predecessor stopped; and it is not his province either to seek to undo the acts of his predecessor, or to call him to account for them. There is no privity whatever between him and his predecessor. He can neither maintain a suit against his predecessor for what the predecessor has done in the course of administration; nor has the orphans' court any jurisdiction to aid him by order to reach money realized by his predecessor.

But this is not the case we have before us now. There is a very marked difference between the provisions of Section 2 of the Testamentary Act of 1798, in relation to the mutual rights and duties of consecutive administrators as between themselves, and the provisions of Section 11 relative to controversies between administrators and their sureties. The property which an administrator *de bonis non* is to administer is distinctly and specifically limited to such property as has not been converted into money. There is no such limitation in Section 11 in regard to the property which an administrator may be required to bring into court at the suit of a surety. " The property remaining in his hands," meaning,

of course, all the property of every kind and character remaining in his hands, may be required to be turned over. And the expression *property* undoubtedly includes *money,* unless there is special reason to the contrary, either in the nature of things, or in the express provisions of the statute itself. It is no enlargement of the jurisdiction of the orphans' court to construe the word *property* as including *money ;* it would be a plain detraction from its conceded authority to construe the word as excluding money, unless the context, or some express provision of the statute, or some necessary implication of law, or some antagonistic course of judicial construction requires us so to hold.

There is nothing in the statute itself that requires such an exclusion, but rather the contrary. Comparison of sections 2 and 11 leads to the conclusion that the latter section is to be taken in its most unrestricted sense. There is nothing in the general testamentary law that so restricts the meaning of the word property. In the case of the *United States* v. *Walker, supra,* there are, it is true, some strong general expressions that, if taken by themselves, might seem to sustain the contention of the appellant. It is said there that "when a chattel is sold, the money received becomes the property of the administrator"; and that "when assets have been turned into money, the assets have ceased to exist as assets of the estate of the deceased." Assuredly, these statements are to be received only in connection with the subject matter under discussion. They were plainly not intended to be taken as correct statements of the law apart from that subject matter and unrestricted by it.

But even if the general expressions contained in the opinion of the court in that decision were applicable to the present case—and we distinctly hold that they are not—they are sufficiently qualified by other expressions to make them accordant with the views which we here enunciate. It is distinctly stated, for example—and it could not well have been stated otherwise—that although assets converted into money become the property of the administrator, he is ac-

countable for them to those beneficially interested. In one sense, no one is more beneficially interested in an estate than the surety upon the administrator's bond; for he may become liable for all the debts of the estate and subrogated to all the rights of the creditors. And he has no means to protect himself against the reckless proceedings or the dishonest acts of an administrator, except by the method resorted to in this case, and authorized by the 11th section of subchapter 14 of the act of 1798. To say that at a certain stage of the administration, when the assets have been converted into money, or so far as they have been converted into money, the surety shall not have the benefit of this act, would be, in our opinion, a nullification of a wise and beneficial statute to which we are not prepared to accede.

We think the special term of the Supreme Court of the District of Columbia did have jurisdiction in the case to make the order which it made; and we affirm that order, with costs; and remand the cause to that term to carry the order into effect, and for further proceedings according to law.

*Affirmed.*