## TENNEY, Administrator, v. TAYLOR.

JUDGMENTS; JURISDICTION; UNDERTAKINGS ON APPEAL; JUSTICES OF THE PEACE.

1. Want of jurisdiction renders a judgment void, and its invalidity may be shown in any proceeding in which it is sought to be enforced.

2. An appeal to the Supreme Court of this District, was taken from the judgment of a justice of the peace, and the appellant gave an undertaking, with a surety, to " satisfy and pay all the intervening damages and costs arising on the appeal," in accordance with R. S. D. C., Sec. 1028, relating to appeals from justices of the peace : *Held*, that a judgment by default in the Supreme Court against the appellant and his surety, was void as against the surety, for want of jurisdiction over his person.

3. And where, under similar circumstances, the appellant gave an undertaking, with a surety, to " abide by, perform and pay " the judgment of the Supreme Court of the District : *Held*, That a judgment by that court was also void as against the surety, there being nothing in the undertaking to imply a submission by the surety to the jurisdiction of the court, so as to authorize a judgment against him.

4. Whether a provision in an undertaking by an appellant and his surety to abide by, perform and pay a judgment, whereby they agree that the judgment may be pronounced against them both, is effectual as a waiver by the surety of "the day in court " and " due process of law," to which every one is entitled, *quaere.*

No. 10.   Submitted September 20, 1893.—Decided October 2, 1893.

HEARING on appeal by the complainant from a decree of the Supreme Court of the District of Columbia, holding an equity term, in a judgment creditor's proceeding. *Affirmed.*

THE COURT in its opinion stated the case as follows:

This is a suit in equity for the enforcement of four judgments at law, aggregating $266 or thereabouts, against an

equitable estate of one of the defendants, Anson S. Taylor, whose position was that of surety on certain appeal bonds, or rather undertakings, as they are called.

In the year 1886, or prior thereto, Richard H. Trunnell recovered four several judgments against the defendant, Benjamin F. Moffett, before a justice of the peace. Appeals were taken by Moffett in all the cases, to the Supreme Court of the District of Columbia ; and an undertaking, in the nature of an appeal bond, for the purpose of supersedeas, was given in each case by Moffett with Anson S. Taylor as surety, in supposed accordance with the provisions of the Revised Statutes of the United States for the District of Columbia concerning appeals from justices of the peace. Upon the appeals, one of the cases was tried by the court with a jury; and there was judgment rendered in favor of the plaintiff, thus affirming the judgment of the justice of the peace. The other cases were permitted to go by default, or else there was an agreement that they should abide by the decision of the case which was tried. In each and all the cases, the judgment was entered up not only against the defendant Moffett, but also against Taylor as his surety. Writs of execution were issued, and returned unsatisfied; and then, it being alleged that all legal remedy had been exhausted, the present suit was instituted to reach an equitable interest of Taylor, the surety, in certain real estate described in the bill.

Taylor made defense to the suit to the effect that the judgments sought to be enforced were void as against him, except as to the matter of costs, on the ground that the court had no jurisdiction to render any such judgments against him in those proceedings; that his only connection with the judgments, or with the suits upon which they were based, was as surety upon certain undertakings entered into by him before the justice of the peace, to enable the defendant Moffett to remove the cases by appeal to the Supreme Court of the District of Columbia; that three of the " undertakings, if lawfully conditioned, were simply given to satisfy and pay all intervening damages and costs arising upon the appeal," in

accordance with the provisions of the statute; that the fourth undertaking, the condition of which was to abide by, perform and pay the judgment upon appeal, was void as being in excess of the requirements of the statute; that in no one of the cases could judgment have been validly rendered against him for more than "intervening damages and costs upon the appeal"; that no "intervening damages" appear to have been incurred, inasmuch as the judgments are merely for principal, interest and costs; that he is only responsible for the costs, which he states he always has been and is now ready and willing to pay; and that, on account of the affair, he has paid the sum of $47.68, which was applied upon one of the judgments, but which he claims should have been applied ratably to the costs of all. But as to this application he waives his claim, and offers to pay all the costs for which he is liable.

Testimony was taken in the suit, but it does not appear in the record; and it was stated in argument and apparently conceded by both sides that it was of no consequence.

The special term decreed that, upon the payment by Taylor, within fifteen days, of the costs in the three cases in which no costs had been paid, and also of one-half of the costs of this equity suit, the bill should stand dismissed. From this decree the complainant appealed to the general term, and that appeal is now before us under the provision of the law that transfers to this court all the causes pending in the general term at the time of the creation of this court.

*Mr. J. J. Waters* for the appellant:

1. The judgments sought to be enforced cannot be collaterally attacked. *Thompson* v. *Tolmie*, 2 Peters, 157 ; *Grignon's Lessee* v. *Astor*, 2 How., 339 ; *Cooper* v. *Reynolds*, 10 Wall., 308 ; *White* v. *Crow*, 110 U. S., 183 ; *Voorhees* v. *Bank*, 10 Pet., 449 ; *Phillips* v. *Negley*, 117 U. S., 675 ; *Marine Ins. Co.* v. *Hodgson*, 7 Cranch, 332 ; *Hendrickson* v. *Hinckley*, 17 How., 443.

2. If the appellee, Taylor's, undertaking had been only for " intervening damages," it would cover the debt sued for, if the debtor had removed or secreted his assets pending the appeal so as to cheat an execution.   *Citlett* v. *Brodie*, 9 Wheat., 553 ;  107 U. S., 386 ;  *U. S. ex rel. Crawford* v. *Addison*, 22 How., 185 ; 6 Wall., 291.    Interest is also part of intervening damages.    *Wash. Ice Co.* v. *Webster*, 125 U. S., 426 ; 107 U. S., 384.

*Mr. J. H. Ralston* for the appellee :

1. In the bond conditioned to " abide by, perform and pay " judgment on appeal, the condition, so far as it was in excess of the condition prescribed by R. S. D. C., Sec. 1028, is void, and could not be the foundation of a judgment against the appellee, Taylor.   *Hutchison* v. *Fulghum*, 4 Heisk., 550;  *Kountze* v. *Omaha Hotel Co.*, 107 U. S., 378.

2. Judgments cannot ordinarily be attacked collaterally, but the judgments in this case being in excess of the jurisdiction conferred by the statute over sureties on justices' bonds, are, as to such excess, void.   *United States* v. *Walker*, 109 U. S., 258 ;  *Dynes* v. *Hoover*, 20 Howard, 65 ;  *Clark et al.* v. *Bryan*, 16 Maryland, 171 ;  *Windsor* v. *McVeigh*, 93 U. S., 282.

Mr. Justice MORRIS delivered the opinion of the Court :

It is argued on behalf of the complainant, that the validity of the judgments cannot be questioned in a collateral proceeding like the present; that it may well have been that it was shown on the trial that, by reason of insolvency of the principal defendant, or for some other reason, the plaintiff had been damnified to the extent of the whole principal sum due, and, at all events, as to the interest that had accrued upon it; that, therefore, upon an undertaking to pay all intervening damages and costs, the judgment against the surety was justified; that we might properly infer that the undertakings in all the cases were the same; and that, even if these undertakings were in excess of the requirements of the

statute, they were good at common law as voluntary undertakings. And it was further claimed that the justice sitting in equity had no right to correct irregularities in the entry of judgments by himself or by any other justice at common law. On the other hand, on behalf of the defendant Taylor, it is insisted that the judgments are void except as to the costs.

Undoubtedly the law is well settled, that the validity of judgments cannot be questioned in any collateral proceeding for mere error or irregularity in their rendition. But it is equally well settled that the invalidity of a judgment for the want of jurisdiction in the court to render it, may be shown in any proceeding whatever in which it is sought to enforce it. For a judgment invalid for the want of jurisdiction, is absolutely void; and the person against whom it is rendered is under no obligation to take any direct steps for its cancellation. *Williamson* v. *Berry*, 8 How., 495 ; *Webster* v. *Reid*, 11 How., 437 ; *Thompson* v. *Whitman*, 18 Wall., 457 ; *Windsor* v. *McVeigh*, 93 U. S., 274 ; *United States* v. *Walker*, 109 U. S., 258.

Lack of jurisdiction, either of the person or of the subject matter, will wholly invalidate a judgment. And even when there is jurisdiction both of the person and of the subject matter, if a court does not proceed according to established modes, or transcends the powers granted to it by law, that fact may be shown in a collateral proceeding; and if shown, the judgment will be regarded as void. *Thompson* v. *Whitman*, 18 Wall., 457 ; *Windsor* v. *McVeigh*, 93 U. S., 274 ; *United States* v. *Walker*, 109 U. S., 258 ; *Pennoyer* v. *Neff*, 95 U. S., 714 ; *Kilbourn* v. *Thompson*, 103 U. S., 198 ; *In re Sawyer*, 124 U. S., 200.

The claim of the defendant in the present suit is, that the court which rendered the four judgments at law that are sought to be enforced here, transcended its authority in rendering them against him, except for the matter of costs.

As already stated, this defendant was not an original party to the transaction. He was introduced merely as a surety

before the justice of the peace who had rendered the original judgments, for the purpose of the execution of the undertaking which was required as a condition for the allowance of the appeal. From this undertaking, and from the law which prescribes it, the extent and character of his liability are to be determined.

This undertaking was provided for by the act of Congress of February 22, 1867, 14 Stat., 403, entitled "An act to amend the law of the District of Columbia in relation to judicial proceedings therein," of which the first section seeks to regulate the matter of appeals from justices of the peace. This first section was embodied in the Revised Statutes of the United States for the District of Columbia, and is as follows:

"Sec. 1028. No appeal shall be allowed from a judgment of a justice of the peace, unless the appellant, with sufficient surety, approved by the justice, enters into an undertaking to satisfy and pay all intervening damages and costs arising on the appeal."

The term *undertaking*, which is used in this statute as the equivalent of an appeal bond, or as a substitute therefor, seems to have made its first appearance in our local legislation in an act of Congress of the previous year (June 1, 1866, 14 Stat., 54), regulating writs of attachment in the District of Columbia. About the same time, or perhaps earlier, it appeared in the rules of the Supreme Court of the District of Columbia, in which, pursuant to the power granted to that court to make rules, it was provided, as one of the requirements for an effective appeal from the special to the general term, that the appellant should file in the cause an undertaking in the following terms:

"The defendant having appealed to the general term from the judgment (or decree) pronounced against him in the special term on the — day of ——, and A. B., his surety, for themselves, and each of them, their and each of their heirs, executors, and administrators, appearing and submitting to the jurisdiction of the said general term, hereby undertake to

abide by, perform, and pay its judgment, which they agree may be pronounced against all of them."

Whence the term came, and why it was introduced, it is unnecessary here to inquire. Its scope and effect, however, are important in our present consideration.

Unlike the ordinary appeal bond, which is an obligation under seal, with a fixed penalty, and a definite condition, limited to become effective or otherwise by the determination of the appeal, the undertaking is without seal, or fixed penalty, and without condition; and is simply a promise or an assumption of liability, to perform a judgment, or to pay damages and costs. Webster defines it in this connection to mean " a promise or pledge; a guarantee." And Bouvier gives it as " an engagement by one of the parties to a contract to the other, and not the mutual engagement of the parties; a promise." But while it differs in form from the bond, its essential purpose and effect are the same as those of the bond—to give the guaranty of an additional person as security for the costs that might be incurred and the damages that might result to an appellee by the prosecution of an appeal that prevents him from realizing his claim as speedily and as effectively as he might otherwise have done.

The form of undertaking in use in the Supreme Court of the District of Columbia for appeals from the special to the general term, besides the simple promise or guaranty to perform the judgment, contains a peculiar provision for the appearance and submission of all the parties, both principal and sureties to the jurisdiction of the court, and an agreement that the judgment to be rendered in the cause might be rendered against both principal and surety; and it is understood that the practice of that court has been so to render judgment on appeal. There is reason to suppose that it was this peculiar feature that induced the substitution of the undertaking for the appeal bond, the idea being that circuity of action was prevented and the administration of justice facilitated by making the surety a party to the pending suit, and by the rendition of judgment against him, as well as against

his principal, dispensing with the necessity of a collateral suit upon the appeal bond or undertaking.

Whether such submission and agreement are effectual as a waiver of " the day in court," and the " due process of law," to which every individual is entitled by common right, public policy, and constitutional guaranty, we express no opinion. But certain it is that an undertaking of itself does not imply that it must contain such a provision. There is no magical effect in the word to subject a person who becomes a party to the instrument to the jurisdiction of the appellate tribunal whose action it is given to invoke. And if there is no such express stipulation in the undertaking, we cannot assume that the person executing it intended to waive his rights, and to consent to a judgment upon it against him in the action in which it was given. Such a waiver must be clear and unequivocal to entitle it to be enforced.

Tested by these principles, the four judgments rendered in the circuit court branch of the Supreme Court of the District of Columbia against the defendant, Anson S. Taylor, are fatally defective. · They are not good even for the costs. In three of the cases, the undertakings, so far as we are entitled to infer from the record, contain no provision whatever for submission to the appellate court, and no agreement by Taylor to authorize the rendition of judgment against him on the appeal. There is no inference to be indulged that the undertakings in the cases were identical in terms with that given in the fourth; for they were given at different times, and there is no proof even of usage in the matter. The only proper inference is, that the provision of the statute was followed; and that requires simply an undertaking to pay intervening damages and costs; and it neither authorizes nor requires any stipulation for submission to the jurisdiction or agreement for the rendition of judgment. These three judgments, therefore, are utterly void as against Taylor for the reason that the court had not in any manner acquired jurisdiction of the person of Taylor, and was without authority to render any judgment whatever against him.

In the case in which the undertaking was given to " abide by, perform, and pay the judgment of the court," the contention of the appellant can no more be sustained than in the other three cases. So far as the record shows, there was no more waiver of process or submission to the jurisdiction in that case than in the others. The mere undertaking of a party to perform the judgment of a court does not give that court jurisdiction to render judgment against him, and does not imply any submission to the jurisdiction of the court so far as to authorize a judgment.

The court below held that this undertaking was void as being in excess of the requirements of the statute; and that being void, there could be no valid judgment upon it for the excess. Upon this we need not express any opinion. It is sufficient for us to say that it contains no consent for the exercise of the jurisdiction of the court; and without such consent, the exercise of jurisdiction was a nullity.

Certain papers filed in this court after this cause was transferred to us purport to contain transcripts of the record entries in the four cases, and a copy of the undertaking of which we have last spoken. Whether it is competent for us to accept these papers at this time, is of no consequence in this suit; for the undertaking now produced, although it contains the clause stipulating for submission to the jurisdiction, does not contain the consent for rendition of judgment against the surety; and we cannot assume from this that the defendant waived his rights to his day in court. On the contrary, so far as it is any indication at all, the omission of the consent to the rendition of judgment is a clear reservation of right by the party.

We are, therefore, of opinion, that all these judgments were utterly void, and not merely erroneous or irregular; and that, therefore, they cannot be enforced, even for the costs. But inasmuch as the defendant has offered to pay the costs, and has not appealed from the decision requiring him so to do, and inasmuch as it appears that he is equitably liable for these costs in some proceeding, we do not think that

the decree, so far as it requires him to pay them, and to pay one-half of the costs of this equity suit, should be disturbed.

It follows that the decree of the Supreme Court of the District of Columbia in special term must be *affirmed, with costs*, and it is so ordered.

*Affirmed.*