Roy *v.* Squier.

---

LEWIS ROY, administrator, &c., of Martin Sipley, deceased,

*v.*

PHILIP W. SQUIER, executor of Elizabeth R. Sipley, deceased.

[Filed January 28th, 1901.]

1. When an executrix, who has so far administered the personal estate of her testator as to convert it into money, dies, and administration *de bonis non* is granted, such administrator has no right to demand of the executor of the deceased executor that part of the estate converted into money. He is entitled only to such chattels or choses in action as have not been so converted and exist as they were at the death of the first testator.

2. Such administrator is not entitled to call in question the mal-administration of his predecessor. That right resides in those who take under the will.

---

*Mr. William H. Morrow,* for the complainant.

*Mr. Irwin W. Shultz,* for the defendant.

REED, V. C.

Martin Sipley died July, 1891, leaving a will, by which he bequeathed to his wife, Elizabeth R. Sipley, all the tangible personal property of which "I shall die possessed of, including stock of farm, farming tools and utensils, household goods, grain and hay, but not to include notes, bonds and mortgages, cash, that is money, and evidences of debt of any kind," to her absolutely.

He also bequeathed to her the equal undivided one-half part of "all the residue of my estate, both real and personal, of whatever kind and wherever situated, for and during her natural life."

He also gave her the remaining equal undivided one-half part of such residue of his estate, to hold "the income, interest and avails thereof to her use for her natural life, there to end without obligation to make reparation and rebuilding without impeachment for waste, voluntary or permissive, as, by law, tenants for life are required to do or incur, except payments of taxes, and without liability to make good any loss or losses that may be incurred, or may result from non-collection of evidences of debt of any kind, that may come to her hands at my decease, as executrix, or that may result from investment or re-investment of the same or any part thereof." He also authorized his wife as executrix of his will to "collect all money due or to grow due on any note or notes, bonds and mortgages and other evidences of debt, at her discretion, and re-invest the same in her name as executrix, that shall come to her hand as such executrix, the use, income and interest whereon I have given and bequeathed to her; but she shall exercise her best judgment in collecting and investing the same so that the body of the same shall be safe and secure so far as in her judgment she can make the same safe and secure."

He directed that after the death of his wife the one-half of
the residue given to her, after the payment of certain pecuniary
legacies, should go to his brothers, Charles L. Sipley and Henry
B. Sipley, in equal shares, as tenants in common.

By a subsequent clause of his will he directed that if the per-
sonal estate in such one-half share shall be insufficient to pay
the money legacies, then any deficiency should be charged on
the real estate comprised in that said one-half of the residue.

The widow, Elizabeth R. Sipley, proved the will and adminis-
tered the estate. She accounted in the orphans court of Warren
county September, 1892, showing a balance in her hands amount-
ing to $5,158.09.

Elizabeth R. Sipley died in September, 1899, leaving a will,
in which she appointed the defendant, Philip W. Squier, her
executor, who has duly proved her will. At the death of Mrs.
Sipley there remained in her hands certain securities belonging
to the estate of Martin Sipley, which she had never collected.

In January, 1900, the complainant, Lewis Roy, was appointed
administrator *de bonis non cum testamento annexo* of the estate
of Martin Sipley, the original testator. This bill is filed by
Lewis Roy, as such administrator *de bonis non,* to recover of the
executor of the widow the estate of Martin Sipley.

The purpose of the suit, as disclosed by the prayer of the bill,
is to discover the amount of assets the debts paid, and also that
Squier may be decreed to deliver to Roy all of the mortgages
and other evidences of indebtedness belonging to the estate of
Martin Sipley, deceased, at the time of his death, or which after
his death came to the hands and possession of Elizabeth R.
Sipley, his executrix, and any and all renewals of the same, or
which came to the hands of Philip Squier, her executor, after
her decease, and for an accounting by Squier for the moneys
and assets of the estate of Martin Sipley, which came to the
hands of the widow, his executrix, after his death, and all her
payments and disbursements on account of the estate; and that
Squier may be decreed to pay over to the complainant such
balance when the same shall have been ascertained.

The specific assets in the hands of Squier which existed in
the same shape as when they originally came to the hands of

Elizabeth R. Sipley, are the John and Elizabeth Ryan mortgage for $145.66, with included interest, the Hill mortgage for $300, and interest, and the Hough mortgage for $150, with interest. In respect to these the right of the administrator *de bonis non* to their possession is entirely clear, for they remained in the hands of the administratrix of Martin Sipley unadministered.

All the remaining assets seem to have been administered by Elizabeth R. Sipley. Even a note of Ira M. Hendershot for $647, which admittedly belongs to the estate of Martin R. Sipley, is made payable to the widow individually, and not as executrix, and was so made at her own request. This would appear to be an administered asset of the estate. In all the assets except the two mortgages and note mentioned, Roy has no interest.

It has been held by a line of cases from *Carrick's Administrator* v. *Carrick's Executor, 8 C. E. Gr. 364,* down to *Parker* v. *Stevens, 16 Dick. Ch. Rep. 163,* that the English rule obtains in this state; and that rule is, that an administrator *de bonis non* can only administer such personal property as remains *in specie* in the form in which it existed at the death of the deceased.

But the act of 1897 (*P. L. of 1897 pp. 192, 193*) is invoked by the complainant. The original act of which this act is an amendment provided that no executor of an executor shall, as such, administer on the estate of the first testator, but on the death of the sole or surviving executor of a last will and testament, letters of administration, with the wills annexed of the assets of the first testator left unadministered, shall be issued, &c. The act of 1897 has not been recognized in the recent cases as at all modifying the common law rule already mentioned. The act is an amendment of the second section of the act concerning executors and administrators of estates, approved March 27th, 1874. *Gen. Stat. p. 1425.* The act of 1897 adds to the section as it stood in the act of 1874 these words:

"and every administrator who has been and shall be so appointed, shall be entitled to demand and receive of the executors of such deceased sole or surviving executor, all the unadministered assets of the first testator," &c.

It is perceived that the right of the administrator *de bonis non* is still expressly confined to the recovery of the unadministered assets, and there is no enlarging force given to the term "unadministered."

The consideration of like statutory language arose in the supreme court of the United States, in considering a statute of the District of Columbia, which provides that the court shall further have power to do and require any asset or estate of the decedent which remains unadministered to be delivered to the newly-appointed administrator *de bonis non.* In *United States v. Walker, 109 U. S. 258,* the court said, respecting this statutory language: "We think the meaning of this act is plain. When it was passed the words 'assets or estate of the decedent which remained unadministered' had a uniform and settled meaning in the statute law of Maryland in force in the District of Columbia, and that meaning, as we have seen, was assets or estate remaining *in specie* and unchanged in form. The act must be construed as using the words in their well-settled signification, unless the contrary appears."

As to all the unadministered assets, therefore, the complainant has no right to call the defendant to an accounting; that right resides in those who take under the will of Martin Sipley. The right to recovery is confined to the specific assets. Even as to these specific assets, as part of the entire balance of the estate, the defendant disputes the complainant's title to the possession thereof, on the theory that the widow was given absolutely an undivided one-half right, title and interest in the property designated as assets, and that, upon her death happening, the administrator *de bonis non* of her husband's estate is not entitled to receive the specific securities, but only one-half of the principal securities when the same are reduced to money or otherwise divided. But it seems apparent that the testator contemplated no division of the residue in the lifetime of the widow, and, in fact, no division was made. The act of division and final distribution seems to belong, incidentally, to the administration of the estate; and the administration will be continued as to those assets which have been changed *in specie* by the representative of the executrix, and as to those which have not

been changed *in specie* by the administrator *de bonis non* of the first testator. This view of the scope of the relief which can be afforded under this bill prevents a decision of the important question argued in the cause, namely, whether the widow was justified in paying off the principal of two bonds secured by mortgage on the real estate comprised in the residuum. The testator, when he acquired title to the Hendershot farm, assumed to pay this mortgage as part of the consideration; but the first grantee from the mortgagor had taken title subject to the mortgage, not assuming a personal liability. The amount of these payments of the obligees aggregate nearly one-half of the *corpus* of the residue, and there can evidently be no settlement of the claims of the pecuniary legatees and of the residuary legatees and devisees of the second portion of the residue without an adjudication with respect thereto. As already observed, the administrator *de bonis non* is not entitled to call in question the maladministration of his predecessor. Any decree in his favor would still leave the estate of the executrix liable, over to the creditors or distributees of the original testator. The widow, as life tenant of the residuary real and personal estate, was trustee for the remaindermen and legatees. *Hunt* v. *Smith, 13 Dick. Ch. Rep. 26.* She is responsible to them for any mismanagement as trustee. The difficulty in the way of the administrator *de bonis non* procuring an accounting was encountered in *Hunt* v. *Smith, supra,* on a bill filed by an administrator *de bonis non* to recover from the administrator of the executrix under a will, not essentially unlike the present one. It was sought in that case to recover administered assets and to charge the estate for converted and wasted assets. The decree was made, but it was made upon a cross-bill filed by a residuary legatee, and the right of the complainant was limited to a recovery of the specific assets, while the residuary legatee was allowed to follow the real estate into the hands of the heirs of the wife.

In the absence of the residuary legatees, as parties to this bill, I find it impossible to do more than say that the complainant is entitled to the three specific securities which remain in the same shape as when they came to the hands of the executrix of Martin Sipley.