575 F.2d 417
 23 Wage & Hour Cas. (BN 747, 83 Lab.Cas. P 33,647
 Ray MARSHALL, Secretary of Labor, United States Department
of Labor, Appellee,
v.
BOARD OF EDUCATION, BERGENFIELD, NEW JERSEY, Appellant,
Arthur E. Clementz, Individually and as President of the
Board of Education, and Carl Ruess, Individually and as
Secretary and Business Administrator of the Board.
 No. 77-1530.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6) Jan. 5, 1978.
Decided March 13, 1978.
 
 Carin Ann Clauss, Sol. of Labor, Donald S. Shire, Associate Sol., Jacob I. Karro, Lois G. Williams, Anastasia T. Dunau, Attys., U. S. Dept. of Labor, Washington, D. C., for appellee; Francis V. LaRuffa, Regional Sol., New York City, on the brief.
 Major & Major, Hackensack, N. J., for appellant; James A. Major, II, Hackensack, N. J., of counsel.
 Before GIBBONS and GARTH, Circuit Judges, and WEINER,* District Judge.
 OPINION OF THE COURT
 GARTH, Circuit Judge.
 
 
 1
 This is an appeal from a denial of a motion made by the Bergenfield Board of Education (Board) pursuant to Fed.R.Civ.P. 60(b).[1]
 
 
 2
 After the Supreme Court determined that states need not comply with federal wage and hour legislation,[2] the Board moved the district court to vacate its judgment which compelled payments of past overtime wages to employees and restrained, inter alia, future underpayment. The Board's motion was made some eight months after this court had affirmed the district court's judgment.
 
 
 3
 The district court vacated so much of its judgment as related to the prospective operation of its decree but refused to vacate its award of past wages. We affirm.
 
 I.
 
 4
 The Secretary of Labor (Secretary) instituted this action in 1971[3] to enjoin the Board and other defendants[4] from violating certain provisions of the Fair Labor Standards Act of 1938 (Act)[5] which provide for minimum wages and maximum hours for employees.[6] On May 7, 1975, judgment for the Secretary was entered, ordering (1) future overtime payments and compliance by the Board with the Act's record-keeping provisions and (2) the payment of $5,570.43 in withheld past wages. Identifying by a separate schedule annexed to the judgment the particular employees and the amount of wages each of them was due, the court directed that a certified check totalling $5,570.43 for past wages be "made payable to the 'Wage and Hour Division Labor' and sent to the United States Department of Labor."[7] In February, 1976, this Court, rejecting the Board's plea to withhold decision pending the Supreme Court's determination of National League of Cities v. Usery, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976) (see Brief for the Board at 7-8), summarily affirmed the May 7, 1975 Judgment (May 7th Judgment) of the district court. 530 F.2d 964 (3d Cir. 1976). The Board did not seek to appeal our Court's judgment to the United States Supreme Court, despite the Board's knowledge that National League was pending before that Court. Rather, in May, 1976, the Board, in satisfaction of the money judgment, delivered a check totalling $5,570.43 to the Secretary to cover the past wages withheld.[8]
 
 
 5
 On June 24, 1976, the Supreme Court decided National League of Cities v. Usery, supra. Overruling Maryland v. Wirtz, 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968), the National League Court held that in most instances the Act could not constitutionally be applied to states and localities. The Court reasoned that:
 
 
 6
 insofar as (the minimum wage and maximum hour provisions of the Act) operate to directly displace the States' freedom to structure integral operations in areas of traditional governmental functions, they are not within the authority granted Congress.
 
 Id. at 852, 96 S.Ct. at 2474.[9]
 
 7
 In the wake of National League, state and local authorities inevitably challenged prior rulings which had applied the Act to them.[10] The Board as we have noted, having failed to seek review in the United States Supreme Court, then filed in the district court a motion pursuant to Fed.R.Civ.P. 60(b) to vacate the May 7th Judgment. That motion was filed on October 22, 1976, four months after National League was decided and eight months after this court had affirmed the district court's May 7, 1975 Judgment.
 
 
 8
 In response to the 60(b) motion, the district court, citing United States v. Swift & Co., 286 U.S. 106, 119, 52 S.Ct. 460, 76 L.Ed. 999 (1932), ruled that "equitable grounds have been established for modifying the injunction imposed upon defendants."[11] However, in considering whether to grant the Board's motion as to the money judgment totalling $5,570.43 that had been ordered, the district court ruled that it would not vacate that portion of the judgment. In so ruling, the district court relied upon and quoted Elgin National Watch Co. v. Barrett, 213 F.2d 776, 779 (5th Cir. 1954):even if (the statute upon which the action was based) was, or is, unconstitutional the judgment based upon it is not void. Until such a judgment is reversed or regularly set aside, it is valid and binding upon the parties thereto and their privies. It is the law of the case. . . . Such a judgment, even though subsequent decisions prove it erroneous, is not void and, since it is not, is not subject to vacation under Rule 60(b)(4), Federal Rules of Civil Procedure, 28 U.S.C.A.[12]
 
 
 9
 On January 24, 1977, the district court's order reflecting these determinations was filed. It is from so much of that order that requires the Secretary to "distribute to defendant's employees in the manner set forth in said (May 7th) Judgment the sum of $5,570.43 paid to (the Secretary) by (the Board) on May 3, 1976" that the Board now appeals.[13]
 
 II
 
 10
 Fed.R.Civ.P. 60(b) provides in relevant part:
 
 
 11
 Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time . . . .
 
 
 12
 The motion filed by the Board on October 22, 1976 sought an order vacating the May 7th Judgment on the ground "that such Judgment is void, and on the further ground that it would be unequitable to enforce it against these defendants."[14] The motion was supported only by a memorandum of law.
 
 
 13
 The district court in its opinion recognized that the Board had failed to specify the particular subsections of Rule 60(b) on which it relied. Despite this omission and the failure of the Board to marshal affidavits or proofs in satisfaction of the strong showing required for the modification of a judgment, Mayberry v. Maroney, 558 F.2d 1159, 1163 (3d Cir. 1977) (Mayberry II ); see 11 C. Wright & A. Miller, Federal Practice and Procedure § 2863, at 207 (1973), the district court nevertheless proceeded to analyze the Board's contentions under subsections (4), (5) and (6). Under subsection (4) the district court, citing In re Four Seasons Securities Laws Litigation, 502 F.2d 834, 842 (10th Cir.), cert. denied, 419 U.S. 1034, 95 S.Ct. 516, 4 L.Ed.2d 309 (1974); Lubben v. Selective Service System Local Board No. 27, 453 F.2d 645, 649 (1st Cir. 1972); and 11 C. Wright & A. Miller, supra § 2862, at 200-01,[15] held that it had jurisdiction over the subject matter of the action when the May 7th Judgment was rendered, and that therefore the judgment was not void.[16] Under subsections (5) and (6), as we have previously noted the court modified the injunction as it would operate in the future, finding equitable grounds to do so in light of National League.[17] It refused, however, to vacate the money judgment which represented back wages due to the employees. Implicit in its January 11th Opinion and explicit in its order which followed the opinion[18] is the district court's recognition that the Board failed to make the requisite showing imposed upon a 60(b) movant.
 
 A.
 
 14
 In the district court and on appeal, the Board primarily relied on subsection (4) of Rule 60(b) for relief from the money judgment entered by the district court. That subsection provides that a court may relieve a party from a final judgment if "the (final) judgment is void."
 
 
 15
 A judgment may indeed be void, and therefore subject to relief under 60(b) (4), if the court that rendered it lacked jurisdiction of the subject matter or the parties or entered "a decree which is not within the powers granted to it by the law." United States v. Walker, 109 U.S. 258, 265-67, 3 S.Ct. 277, 282, 27 L.Ed. 927 (1883); 7 J. Moore, Moore's Federal Practice P 60.25(2), at 301-06 (2d ed. 1975); 11 C. Wright & A. Miller, supra § 2862, at 198-200; see Lubben v. Selective Service System Local Board No. 27, supra, 453 F.2d at 649-50.[19] By contrast, a judgment is not void and is therefore not within the ambit of 60(b)(4) simply because it is erroneous, or is based upon precedent which is later deemed incorrect or unconstitutional. Chicot County Drainage District v. Baxter State Bank, 308 U.S. 371, 374-78, 60 S.Ct. 317, 84 L.Ed. 329 (1940); Lubben v. Selective Service System Local Board No. 27, supra, 453 F.2d at 649-50; Elgin National Watch Co. v. Barrett, supra, 213 F.2d at 779; 7 Moore's Federal Practice, supra P 60.25(2), at 303-06; 11 C. Wright & A. Miller, supra § 2862, at 198.
 
 
 16
 With these principles in mind, we are not persuaded by the Board's argument that the reversal of Maryland v. Wirtz, supra, by the National League Court rendered the May 7th Judgment void, and therefore divested the district court of jurisdiction ab initio. Chicot County, supra which is virtually indistinguishable in principle from this case has effectively disposed of the Board's contention that a subsequent change in constitutional law operates to void a judgment. In Chicot, bondholders sought to cancel a final judgment providing for state debt readjustment in light of a subsequent, unrelated Supreme Court decision which invalidated the federal statute affording such readjustment. The Supreme Court rejected the bondholders' argument that the subsequent invalidation of the statute on state sovereignty grounds divested the jurisdiction of the court which rendered the original decree. Instead the Supreme Court upheld the res judicata effect of the final judgment. 308 U.S. at 374-78, 60 S.Ct. 317.
 
 
 17
 There is little that appeared in Chicot that does not appear here. Here as in Chicot the losing party, although aware at the time of the entry of the original judgment, declined to seek ultimate review. Here as in Chicot a statute was held unconstitutional in subsequent, unrelated litigation. The conclusion which we reach under these circumstances was expressed in Chicot as follows:
 
 
 18
 The argument is pressed that the District Court was sitting as a court . . . with the limited jurisdiction conferred by statute, and that, as the statute was later declared to be invalid, the District Court was without jurisdiction to entertain the proceeding and hence its decree is open to collateral attack. We think the argument untenable. The lower federal courts are all courts of limited jurisdiction, that is, with only the jurisdiction which Congress has prescribed. But none the less they are courts with authority, when parties are brought before them in accordance with the requirements of due process, to determine whether or not they have jurisdiction to entertain the cause and for this purpose to construe and apply the statute under which they are asked to act. Their determinations of such questions, while open to direct review, may not be assailed collaterally.
 
 
 19
 308 U.S. at 376, 60 S.Ct. at 319; cf. McSparran v. Weist, 402 F.2d 867 (3d Cir. 1968) (en banc), cert. denied, 395 U.S. 903, 89 S.Ct. 1739, 23 L.Ed.2d 217 (1969) (applying prospectively a determination of lack of jurisdiction in the diversity context).[20] We are therefore satisfied that despite the Board's contention that the district court lacked jurisdiction to enter the May 7th Judgment, thereby rendering that judgment void, neither precedent nor logic supports such a holding.20a
 
 B.
 
 20
 Having held that the May 7th Judgment is valid, we turn to the other considerations adverted to in the briefs of the parties and in the district court opinion.
 
 
 21
 Even without regard to the legal analysis made by the district court as to the applicability of 60(b)(5) and 60(b)(6) an analysis with which we concur the failure of the Board to do other than characterize the district court's action as "unequitable"[21] is insufficient to establish the showing required for the modification of a final judgment. The record as we have previously noted contains no affidavits, no proofs, and no offers of proof which could constitute any showing, let alone a "strong" showing. It is significant to us that at no time has the Board ever contended that it has met the burden imposed upon it by Mayberry II, supra, 558 F.2d at 1163. It is therefore clearly evident to us that on this record with the burden on the movant Board, the district court did not abuse its discretion in refusing to vacate the money judgment which it had ordered to be paid some twenty months earlier.
 
 
 22
 Our legal analysis as to the applicability of Rule 60(b)(5) and (6) in these circumstances also dictates an affirmance of the district court's judgment.
 
 
 23
 First, the district court impliedly recognized,[22] as we recognize expressly, that a motion made under Rule 60(b)(5) or (6) may not generally substitute for an appeal. Martinez-McBean v. Government of Virgin Islands, 562 F.2d 908, 911 (3d Cir. 1977) (60(b)(6)); Lubben v. Selective Service System Local Board No. 27, supra, 453 F.2d at 650 (60(b)(5)); 11 C. Wright & A. Miller, supra § 2864, at 214-15; 7 Moore's Federal Practice, supra P 60.27(2), at 353; see Ackermann v. United States, 340 U.S. 193, 197-99, 71 S.Ct. 209, 95 L.Ed. 207 (1950). Here the Board, unlike the petitioners in New Jersey v. Usery, 427 U.S. 909, 96 S.Ct. 3196, 49 L.Ed.2d 1202 (1976), and in Indiana v. Usery, 427 U.S. 909, 96 S.Ct. 3196, 49 L.Ed.2d 1202 (1976), failed to appeal its case to the Supreme Court even though it knew that the precise issue posed here was pending before that Court in National League of Cities. In Ackermann, the Supreme Court denied Rule 60(b)(6) relief to a party who failed to protect his interests through use of available judicial channels. The Court admonished:
 
 
 24
 Petitioner made a considered choice not to appeal, apparently because he did not feel that an appeal would prove to be worth what he thought was a required sacrifice of his home. His choice was a risk, but calculated and deliberate and such as follows a free choice. Petitioner cannot be relieved of such a choice because hindsight seems to indicate to him that his decision not to appeal was probably wrong, considering the outcome of the (National League ) case. There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from.
 
 
 25
 340 U.S. at 198, 71 S.Ct. at 212. But cf. Polites v. United States, 364 U.S. 426, 433, 81 S.Ct. 202, 5 L.Ed.2d 173 (1960).
 
 
 26
 Second, in its original opinion, the district court relied on Maryland v. Wirtz, the case subsequently overruled by National League. Reliance on a judgment in an unrelated case, however, does not make the original judgment vulnerable within the "prior judgment" clause of subsection 5.[23] Lubben v. Selective Service System Local Board No. 27, supra, 453 F.2d at 650;[24] see 11 C. Wright & A. Miller, supra § 2863, at 204 ("(t)his ground (subsection (5)) is limited to cases in which the present judgment is based on the prior judgment in the sense of res judicata or collateral estoppel. It does not apply merely because a case relied on as precedent . . . has since been reversed"); cf. Ackermann v. United States, supra, 340 U.S. at 197-99, 71 S.Ct. 209; Chicot County Drainage District v. Baxter State Bank, supra, 308 U.S. at 374-78, 60 S.Ct. 317.
 
 
 27
 Third, the "prospective application" clause of Rule 60(b)(5)[25] affords the Board no relief. That clause incorporates the time-honored rule that a "court of equity (may) modify an injunction in adaptation to changed conditions." United States v. Swift & Co., 286 U.S. 106, 114, 52 S.Ct. 460, 462, 76 L.Ed. 999 (1932); accord, Lubben v. Selective Service System Local Board No. 27, supra, 453 F.2d at 651; 7 Moore's Federal Practice, supra P 60.26(4), at 327-28; 11 C. Wright & A. Miller, supra § 2863, at 204-05; see System Federation No. 91 v. Wright, 364 U.S. 642, 646-48, 81 S.Ct. 368, 5 L.Ed.2d 349 (1961); Pennsylvania v. Wheeling & Belmont Bridge Co., 59 U.S. (18 How.) 421, 431-32, 15 L.Ed. 435 (1856); Jordan v. School District of City of Erie, 548 F.2d 117, 120-22 (3d Cir. 1977). The definitional limitation in subsection (5) is significant in that it empowers a court to modify a judgment only if it is "prospective," or executory, see Pennsylvania v. Wheeling & Belmont Bridge Co., supra, 59 U.S. (18 How.) at 431-32 (under common law).[26] By contrast, a judgment at law for damages for past wrongs is "inherently final," American Iron & Steel Institute v. EPA, 560 F.2d 589, 599 (3d Cir. 1977), cert. denied, --- U.S. ----, 98 S.Ct. 1467, 55 L.Ed.2d 505, (1978), and remains unaffected by a subsequent change in the law. Pennsylvania v. Wheeling & Belmont Bridge Co., supra, 59 U.S. (18 How.) at 431. Thus the district court's refusal here to vacate the award of damages for past overtime wages wrongfully withheld conformed with the mandate of Rule 60(b)(5) and its common law heritage. Ryan v. United States Lines Co., 303 F.2d 430, 434 (2d Cir. 1962) (Rule 60(b)(5) "does not cover the case of a judgment for money damages"); 11 C. Wright & A. Miller, supra § 2863, at 205; see Pennsylvania v. Wheeling & Belmont Bridge Co., supra, 59 U.S. (18 How.) at 431; cf. American Iron & Steel Institute v. EPA, supra, 560 F.2d at 599 (court contrasted money judgment and other "inherently final" relief with "an order which necessarily is of a continuing nature"). See also System Federation No. 91 v. Wright, supra, 364 U.S. at 647-48, 81 S.Ct. at 371 ("(a) balance must thus be struck between the policies of res judicata and the right of the court to apply modified measures to changed circumstances").[27]
 
 
 28
 Lastly, nor may the Board rely on subsection (6) of Rule 60(b) ("any other reason justifying relief"), which "provides for extraordinary relief and may only be invoked upon a showing of exceptional circumstances." Vecchione v. Wohlegemuth, 558 F.2d 150, 159 (3d Cir.), cert. denied , --- U.S. ----, 98 S.Ct. 439, 54 L.Ed.2d 304 (1977), quoting Mayberry v. Maroney, 529 F.2d 332, 335 (3d Cir. 1976) (Mayberry I ); accord, Martinez-McBean v. Government of Virgin Islands, supra, 562 F.2d at 911; Mayberry II, supra, 558 F.2d at 1163; Stradley v. Cortez, 518 F.2d 488, 493 (3d Cir. 1975). As we have earlier indicated, no circumstances, least of all "exceptional circumstances" requiring "extraordinary relief," have been demonstrated in this record. The Board having failed to prove that "absent (Rule 60(b)) relief an 'extreme' or 'unexpected' hardship will result," Mayberry II, supra, 558 F.2d at 1163,[28] the district court properly exercised its discretion[29] when it denied the relief which the Board sought.
 
 
 29
 The order of the district court will be affirmed.
 
 
 30
 GIBBONS, Circuit Judge, dissenting.
 
 
 31
 The majority opinion takes us on a long excursion through the various subsections of Rule 60(b) in a labored effort to establish why many of them would not provide a ground for relief from the earlier judgment. The fact remains, however, that relief was given, and properly so. The district court granted the Board's motion for relief from that part of its earlier injunction ordering future compliance with the terms of the Fair Labor Standards Act.[1] However, the court refused to permit relief from that part of its injunction ordering the Board to pay to the Secretary of Labor a sum equal to back wages owed under the Act, despite the fact that the Secretary has not yet distributed the money to the employees. Neither the district court nor the majority here adequately discusses why, for purposes of a Rule 60(b) motion, those parts of the earlier judgment are treated differently. The Secretary's action under § 17 of the Fair Labor Standards Act[2] was equitable in nature. Both the order prohibiting future violations of the Act and the order enjoining the employer to pay back wages are equitable remedies not available in the absence of the federal statute. There is no equitable basis for differentiating between these two orders on a Rule 60(b) motion. Accordingly, I must dissent.
 
 
 32
 The judgment from which the Board sought relief arose out of an action brought by the Secretary of Labor pursuant to § 17 of the Fair Labor Standards Act. Section 17 states in relevant part:
 
 
 33
 The district courts . . . shall have jurisdiction, for cause shown, to restrain violations of section 215 of this title, including in the case of violations of sections 215(a)(2) of this title the restraint of any withholding of payment of minimum wages or overtime compensations found by the court to be due to employees under this chapter . . . .[3]
 
 
 34
 The prayer for relief in the Secretary's complaint was worded essentially in the language of § 17. The only judgment entered was an injunction. That injunction directed future compliance with § 15(a)(2) of the Act, 29 U.S.C. § 215(a)(2), and provided further:
 
 
 35
 Ordered, Adjudged, and Decreed that defendant shall not withhold the payment of wages and shall pay to its employees or former employees named in Exhibit A annexed hereto and which is hereby incorporated in and made part of this judgment the sum stated therein, which sum represents back wages found to be due to said employees under the Act, payment thereof to be made within thirty (30) days after entry of this judgment by certified check in the total amount of $5,570.43, made payable to the "Wage and Hour Division Labor" and sent to the United States Department of Labor, Wage and Hour Division, 133 Ellison Street, Paterson, New Jersey 07505; and it is further
 
 
 36
 Ordered, Adjudged and Decreed that any net sums which within one (1) year after the filing of this judgment have not been distributed to employees named on Exhibit A or to their personal representatives, because of inability of either defendant or plaintiff to locate the proper person or because of the refusal of such persons to accept such sums, shall be deposited with the Clerk of this Court who shall forthwith deposit such money with the Treasurer of the United States pursuant to 29 (28) U.S.C. 2041 (1964) . . . .
 
 
 37
 It is well settled that the Secretary's action under § 17 is completely equitable. See, e. g., Wirtz v. Jones, 340 F.2d 901 (5th Cir. 1965); Dunlop v. Darboian Enterprises, Inc., 410 F.Supp. 479 (E.D.Mich.1975); Wirtz v. Riccio, 264 F.Supp. 134 (M.D.Pa.1967); Wirtz v. Robert E. Bob Adair, Inc., 224 F.Supp. 750 (W.D.Ark.1963). The only remedy that the district court is empowered to grant under § 17 is an injunction. Although the court can enjoin the employer from "withholding payment of minimum wages or overtime compensation" found to be owing to the employees, such an order does not constitute compensatory relief. Dunlop v. Darboian Enterprises, Inc., 410 F.Supp. 479, 481 (E.D.Mich.1975). Rather, the purpose of such an injunctive order is to exact compliance with the terms of the statute. Enforcement of the statute by the Secretary precludes private damage actions by the employees under § 16(b) of the Act.[4] Because an action under § 17 is equitable in nature, the defendant-employer is not entitled to a jury trial. See, e. g., Wirtz v. Jones, 340 F.2d 901 (5th Cir. 1965). Moreover, if the defendant fails to comply with the terms of the injunction decreed by the district court, that defendant can be held in contempt. Hodgson v. Hotard, 436 F.2d 1110 (5th Cir. 1971). The Court in Robert E. Bob Adair, Inc. aptly discussed the role of money payments in § 17's equitable scheme:
 
 
 38
 Although the suit filed by the Secretary affects the rights of the employees mentioned in the complaint and although payments to them are sought, the action in the last analysis is not brought by the employees or for their personal benefit, except incidentally. The Secretary is suing for the benefit of the public and to vindicate a public right. The Secretary is seeking to secure future compliance with the law, which is in the public interest, and he is seeking by means of a negative order to compel the defendants to make reparations for alleged past violations of the law, which likewise is in the public interest. The relief sought is equitable and it is no less so because compliance with the decree which plaintiff seeks may require the defendants to pay out money. That the filing of the suit has affected, and that the outcome of the suit may further affect, the substantive rights of the employees does not convert the proceeding from a suit in equity to an action at law, and does not convert the prayer for a negative injunction requiring defendants to cease to withhold moneys allegedly due the employees into a legal claim for money damages.
 
 
 39
 224 F.Supp. at 756.
 
 
 40
 In granting the Board partial relief, the district court conceded that the unconstitutionality of the statute upon which its judgment had been based was a ground for relief from that judgment. Nevertheless, the court refused to vacate that part of its order restraining the employer from withholding payments due to the employees. Yet the Board's Rule 60(b) motion was made before the Secretary had distributed any of the money to the employees named in the exhibit attached to the judgment and before he had paid over to the United States Treasury any portion of the $5,570.43 attributable to employees who could not be located. Thus, the Board filed its motion prior to the full execution of the injunction, while the Secretary still held the funds as a trustee, agent, or class representative for the listed employees. The Supreme Court's decision in National League of Cities v. Usery, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), makes clear that those employees have no legal right to receive the sums in question and, on any rational theory of constitutional law, never did have such a right. The district court's opinion in support of its result points to no circumstance which would make it equitable for the injunction to be given the ongoing effect of paying to the Board's employees sums to which they are not now and have never been legally entitled. If it was equitable to prevent the ongoing operation of the first two paragraphs of the injunction, it was equally equitable to prevent the ongoing operation of the last two paragraphs.
 
 
 41
 At least since 1856 it has been the rule that a change in the law which becomes effective before an injunction has been fully executed is a ground for relief from the judgment which imposed that injunction. In Pennsylvania v. Wheeling & Belmont Bridge Co., 54 U.S. (13 How.) 519, 15 L.Ed. 435 (1852), the Supreme Court, acting in its original jurisdiction, enjoined the maintenance of a bridge across a navigable stream unless the bridge's span was constructed high enough to permit the passage below of high-stack steamboats. Subsequent to the Court's decision, Congress passed a statute directing the steamboat crews to lower the stacks on their boats. Because of this statutory change, in Pennsylvania v. Wheeling & Belmont Bridge Co., 59 U.S. (18 How.) 421 (1856), the Supreme Court relieved the bridge owners from the dictates of its earlier injunction.
 
 
 42
 A change in constitutional law is an a fortiori case. Indeed it is difficult to conceive of any ground for relief from a judgment that is more compelling than that the statute which gave the court jurisdiction and created the cause of action has been declared unconstitutional. This court recognized as much in Neely v. United States, 546 F.2d 1059 (3d Cir. 1976). Neely brought a class action seeking relief from criminal convictions and from fines imposed under a federal statute later held to be unconstitutional. Neely and other members of the class had pleaded guilty. Nevertheless, we held that under the Tucker Act, 28 U.S.C. § 1346, the plaintiffs could obtain relief from the convictions and recover the fines paid. We properly construed Rule 60(b) as follows:
 
 
 43
 In abolishing coram nobis, as well as several other ancient procedural devices, Rule 60(b) did not, and indeed could not, "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072. The very sentence which abolishes coram nobis provides for relief from a judgment by motion or by an independent action. The prior sentence of the rule provides that "(t)his rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment . . .." Clearly, the rule provides a choice between motion or independent action, at the initiating party's option.
 
 
 44
 546 F.2d at 1065-66.
 
 
 45
 In this instance the Board chose to bring a Rule 60(b) motion rather than an independent action. The fact that the Board selected that route does not alter its equitable claim for relief from the judgment. See Boughner v. Secretary of HEW, 572 F.2d 976 at 977 (3d Cir. 1978) (recognizing the availability of Rule 60(b) relief where statute upon which judgment was based was declared unconstitutional). If, as we held in Neely, a Rule 60(b) motion or an equivalent independent action can be maintained to recover fines already paid into the United States Treasury, either route must be available to recover sums obtained from the Board and held by the Secretary in a purely representative or fiduciary capacity. It makes no difference that the fiduciary in this case also happens to be a government official. Indeed, until the law was changed and other remedies were substituted, it was recognized that a government agent who received funds on behalf of the government as a disclosed principal had the same duty as any other agent to refrain from paying them over once he was given notice of adverse claims. See, e. g., Elliott v. Swartwout, 35 U.S. (10 Pet.) 137, 9 L.Ed. 373 (1836); Tracy v. Swartwout, 35 U.S. (10 Pet.) 80, 9 L.Ed. 354 (1836). The Secretary here is in the classic position of an agent who is holding funds received from a third party and who has been put on notice that his principal is not entitled to the funds. His only possible justification for paying over the funds is the provision in the judgment directing him to do so. The third party claimant, the Board, contends that the Supreme Court's decision in National League of Cities entitles it to be relieved from that judgment. The district court agreed that that decision justified relief under Rule 60(b) but nevertheless gave only partial relief. The court distinguished the injunctive provision directing the Secretary to pay the money to the employees from the injunctive provision directing the Board to make future payments. But the court did not refer to any equitable consideration which would support its distinction. Assuming the legitimacy of National League of Cities, no such equitable consideration exists. I can think of no reason why the Board's employees should benefit from an injunction based on an unconstitutional statute, at least where that injunction has not been fully executed.
 
 
 46
 In its discussion of the various subsections of Rule 60(b), the majority ignores the single issue before us. Since the unconstitutionality of the statute clearly justified relief from the judgment, what equitable basis is there for distinguishing the ongoing effects of the first two paragraphs from the ongoing effects of the last two? In the only part of its opinion that addresses that question, the majority suggests that there is a distinction, for purposes of relief from a judgment, between an action at law and a suit in equity. Maj.Op. at ---- - ----. That sort of medieval reasoning, even assuming that it survives our Neely decision, does not serve any purpose in this case. The district court had no jurisdiction under § 17 of the Fair Labor Standards Act to enter a judgment at law. The entire action was equitable. The only judgment that was or could have been entered was an injunction. That injunction remains unexecuted. Relief from that equitable remedy should have been granted.
 
 
 47
 I would reverse the judgment of the district court and direct the Secretary to pay back the $5,570.43 to the Board.
 
 
 
 *
 The Honorable Charles R. Weiner, United States District Court for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 Rule 60(b) is quoted in relevant part at p. 421 infra
 
 
 [2]
 National League of Cities v. Usery, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976)
 
 
 [3]
 The Secretary brought this action pursuant to § 17 of the Fair Labor Standards Act, 29 U.S.C. § 217, which provides in material part:
 The district courts . . . shall have jurisdiction, for cause shown, to restrain violations of section 215 of this title, including in the case of violations of section 215(a)(2) of this title the restraint of any withholding of payment of minimum wages or overtime compensation found by the court to be due to employees under this chapter . . . .
 
 
 [4]
 Originally, members of the Board were also named as defendants. Judgment, however, was entered only against the Board, and the Board brought the motion which is the subject of this appeal
 
 
 [5]
 52 Stat. 1060 (codified as amended at 29 U.S.C. §§ 201-219)
 
 
 [6]
 E. g., 29 U.S.C. §§ 206 (minimum wage), 207 (maximum hours), 215 (prohibited acts). Specifically the Secretary sought to restrain defendants from violating the overtime and record-keeping requirements of the Act and to compel the payment of past overtime wages due to employees
 
 
 [7]
 Judgment filed May 7, 1975, at 2. The district court stated therein that it was:
 Ordered, Adjudged, and Decreed that defendant shall not withhold the payment of wages and shall pay to its employees or former employees named in Exhibit A annexed hereto and which is hereby incorporated in and made part of this judgment the sum stated therein, which sum represents back wages found to be due to said employees under the Act, payment thereof to be made within thirty (30) days after entry of this judgment by certified check in the total amount of $5,570.43, made payable to the "Wage and Hour Division Labor" and sent to the United States Department of Labor, Wage and Hour Division, 133 Ellison Street, Paterson, New Jersey 07505; and it is further
 Ordered, Adjudged and Decreed that any net sums which within one (1) year after the filing of this judgment have not been distributed to employees named on Exhibit A or to their personal representatives, because of inability of either defendant or plaintiff to locate the proper person or because of the refusal of such persons to accept such sums, shall be deposited with the Clerk of this Court who shall forthwith deposit such money with the Treasurer of the United States pursuant to 29 (28) U.S.C. 2041 (1964); . . ..
 Under 29 U.S.C. § 216, Congress afforded both a right for individual employees to bring an action against an employer for past wages due and a means, utilized here, whereby sums recovered by the Secretary pursuant to a lawsuit under § 217 shall be paid into a special account maintained by the Secretary for eventual distribution to affected employees. If the employees are unavailable to receive the distribution, the recovery must be paid to the United States Treasury.
 
 
 [8]
 At the request of the Board's counsel, the Secretary has not yet distributed these sums to the particular employees. Brief for the Secretary at 3 n.3
 
 
 [9]
 National League is discussed extensively in Note, The Constitutionality of Federal Regulation of Municipal Securities Issuers: Applying the Test of National League of Cities v. Usery, 51 N.Y.U.L.Rev. 982, 1000-06 (1976)
 
 
 [10]
 Where defendants had appealed such decisions by filing a petition for certiorari, the Supreme Court granted their petition, vacated the lower court judgment and remanded their cases for reconsideration in light of National League. E. g. New Jersey v. Usery, 427 U.S. 909, 96 S.Ct. 3196, 49 L.Ed.2d 1202 (1976); Indiana v. Usery, 427 U.S. 909, 96 S.Ct. 3196, 49 L.Ed.2d 1202 (1976)
 
 
 [11]
 Letter Opinion filed January 11, 1977, at 4 (January 11th Opinion). That opinion has not been officially published
 
 
 [12]
 January 11th Opinion at 3 (emphasis in original letter opinion)
 
 
 [13]
 Order filed January 24, 1977 (January 24th Order)
 
 
 [14]
 Notice of Motion filed October 22, 1976 (October 22nd Motion)
 
 
 [15]
 January 11th Opinion at 2
 
 
 [16]
 Id
 
 
 [17]
 Recognizing that "(t)he Supreme Court in Usery v. National League of Cities, supra, held that the minimum wage and overtime provisions of the Fair Labor Standards Act could not constitutionally be applied to public employers like defendant who are engaged in traditional governmental functions," Brief for the Secretary at 4, the Secretary neither opposed vacation of the prospective injunction before the district court, id., nor appealed from that portion of its judgment. Thus this issue is not before us on this appeal
 
 
 [18]
 January 24th Order
 
 
 [19]
 In Lubben, the First Circuit stated:
 A void judgment is to be distinguished from an erroneous one, in that the latter is subject only to direct attack. A void judgment is one which, from its inception, was a complete nullity and without legal effect. In the interest of finality, the concept of void judgments is narrowly construed. While absence of subject matter jurisdiction may make a judgment void, such total want of jurisdiction must be distinguished from an error in the exercise of jurisdiction. A court has the power to determine its own jurisdiction, and an error in that determination will not render the judgment void. Only in the rare instance of a clear usurpation of power will a judgment be rendered void.
 453 F.2d at 649 (footnotes omitted).
 
 
 [20]
 We see little difference here between the facial constitutionality of 29 U.S.C. § 217, quoted n.3 supra, giving the district court jurisdiction over employers, and the jurisdictional grant of 28 U.S.C. § 1332 (diversity) which is subject to divestment by a finding of collusion under 28 U.S.C. § 1359. See McSparran v. Weist, supra
 Moreover, National League focused not on jurisdiction but on particular strictures which might be imposed by federal authorities upon state sovereignties, leaving open the possibility of federal wage regulation where essential state functions are not implicated. See, e. g., Fry v. United States, 421 U.S. 542, 95 S.Ct. 1792, 44 L.Ed.2d 363 (1975) (upholding federal regulation temporarily freezing wages of state employees, as it "displaced no state choices as to how governmental operations should be structured." National League, supra, 426 U.S. at 853, 96 S.Ct. 2465).
 20a The dissent, in characterizing the Board's claim as one which "clearly justified relief", Dissenting Op. at 429 would have us hold that the district court lacked jurisdiction to enter the May 7th Judgment. Id. As the text above reveals, and as held in Chicot County (an authority not addressed by the dissent), a claim such as that advanced by the Board does not "clearly justif(y) relief", nor was the district court divested of jurisdiction by the later Supreme Court pronouncement in National League.
 
 
 [21]
 October 22nd Motion at 1
 
 
 [22]
 See January 11th Opinion at 4
 
 
 [23]
 That clause provides that a final judgment may be modified if "a prior judgment upon which it is based has been reversed or otherwise vacated."
 
 
 [24]
 As explained in Lubben v. Selective Service System Local Board No. 27, supra :
 For a decision to be "based on" a prior judgment within the meaning of Rule 60(b)(5), the prior judgment must be a necessary element of the decision, giving rise, for example, to the cause of action or a successful defense. See, e. g., Butler v. Eaton, 141 U.S. 240, 11 S.Ct. 985, 35 L.Ed. 713 (1891), Michigan Surety Co. v. Service Machinery Corp., 277 F.2d 531 (5th Cir. 1960); Block v. Thousandfriend, 170 F.2d 423 (2d Cir. 1948). It is not sufficient that the prior judgment provides only precedent for the decision.
 "It should be noted that while 60(b)(5) authorizes relief from a judgment on the ground that the prior judgment upon which it is based has been reversed or otherwise vacated, it does not authorize relief from a judgment on the ground that the law applied by the court in making its adjudication has been subsequently overruled or declared erroneous in another and unrelated proceeding." 7 Moore's Federal Practice P 60.26(3) at 325.
 453 F.2d at 650 (footnote omitted).
 
 
 [25]
 That clause provides that a judgment may be modified if "it is no longer equitable that the judgment should have prospective application."
 
 
 [26]
 The district court accordingly restricted its modification of the judgment to vacating only the prospective effects of its decree. See System Federation No. 91 v. Wright, supra, 364 U.S. at 650 & n.6, 81 S.Ct. 368; Jordan v. School District, supra, 548 F.2d at 121-22; Elgin National Watch Co. v. Barrett, supra, 213 F.2d at 780
 
 
 [27]
 The Secretary's agreement to postpone distribution of the $5,570.43 to particular employees, see n.8 supra, does not render the May 7th Judgment "prospective". Under the statutory scheme embodied in 29 U.S.C. §§ 216 and 217, the Secretary may be deemed an agent or conduit for the underpaid employees vis-a-vis their employer. Furthermore, not only the statute but also the May 7th Judgment made the 1975 payment to the Secretary effective payment to the employees for whom the Secretary was acting. Moreover, in light of the terms of the judgment and the parties to the proceeding it is only the Secretary and not the employees who can warrant satisfaction of the judgment of record. Thus the money judgment for $5,570.43 was satisfied when payment was made to the Secretary in May, 1976. The employees therefore having been paid, we cannot agree with the dissent's characterization that the district court's order had not been executed and that no legal rights had inured to the employees a proposition for which the dissent cites no authority. Dissenting Op. at 428, 429
 Were the status of the Secretary otherwise, the result under subsection (5) would still not be different. A "prospective" injunction envisions a restraint of future conduct, not an order to remedy past wrongs when the compensation payment is withheld from the beneficiaries until some subsequent date. See 11 C. Wright & A. Miller, supra § 2863, at 205.
 
 
 [28]
 In Mayberry II our court explained that "a healthy respect for the finality of judgments demands no less" than this stringent showing. And even were we to differ from the district court in our determination of the weight to be accorded to the finality factor in this instance, "(w)here there is such a balance of imponderables there must be wide discretion in the District Court." System Federation No. 91 v. Wright, supra, 364 U.S. at 648, 81 S.Ct. at 371. See also Bradley v. Richmond School Board, 416 U.S. 696, 711 n.15, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974), quoting Chicot County, supra, 308 U.S. at 374, 60 S.Ct. 317 (such imponderables include "(q)uestions 'of rights claimed to have become vested, of status, of prior determinations deemed to have finality and acted upon accordingly, of public policy in the light of the nature both of the statute and of its previous application' ")
 
 
 [29]
 Recently the Supreme Court reaffirmed the standard by which a 60(b) ruling is to be reviewed: "(t)he Court of Appeals may review the (60(b)) ruling only for abuse of discretion." Browder v. Director, --- U.S. ----, ----, 98 S.Ct. 556, 560 n.7, 54 L.Ed.2d 521 (1978). In stressing equitable considerations, however, Dissenting Op. at 428, the dissent does not even advert to the district court's ruling in this respect nor to our holding that it constituted a proper exercise of discretion in light of the record. Nonetheless we do not read the dissent's silence as disputing the relevance of the abuse of discretion standard in the context of a 60(b) application. Nor do we read the dissent's silence as implying any distinction between a legal and equitable action in respect to the strong showing required of a 60(b) movant. See Mayberry II, supra (action brought to vacate consent judgment which granted equitable relief against the state)
 
 
 [1]
 Act of June 25, 1938, ch. 676, 52 Stat. 1060, codified as amended at 29 U.S.C. § 201 et seq
 
 
 [2]
 29 U.S.C. § 217
 
 
 [3]
 29 U.S.C. § 217
 
 
 [4]
 29 U.S.C. § 216(b)