HARRIS, Roy, Appellant,

v.

MARTIN, Robert L., Supt.,
Allenwood F.P.C.

HARRIS, Roy, Appellant,

v.

UNITED STATES PAROLE
COMMISSION.

No. 86–5869.

United States Court of Appeals,
Third Circuit.

Argued July 16, 1987.

Decided Nov. 30, 1987.

Rehearing Denied Feb. 22, 1988.

James J. West, U.S. Atty., Barbara L. Kosik, Asst. U.S. Atty., Henry J. Sadowski (argued), Scranton, Pa., for appellee.

Before SLOVITER, STAPLETON, and HUNTER, Circuit Judges.

STAPLETON, Circuit Judge.

This case presents the question of whether the "prior judgment" clause of Fed.R. Civ.P. 60(b)(5) [1] entitles a government agency to relief from a final and unappealed adverse judgment where the opinion supporting that judgment relies upon the holding in another case that the agency subsequently succeeds in overturning. The district court held that the agency was entitled to relief. We will reverse.

## I.

Following conviction on narcotics offenses, Roy Harris was sentenced in 1981 to twelve years' imprisonment and a ten-year special parole term.[2] In 1984, the examiner panel, using the parole guidelines in effect at the time of the initial hearing, determined that Harris should be required to serve in excess of 100 months,[3] and finding no reason to go outside the guidelines, recommended that Harris be continued to the expiration of his sentence. In effect, this recommendation amounted to a requirement that Harris serve 96 months.[4] The examiners' recommendation was ultimately affirmed by the National Appeal

Cheryl J. Sturm (argued), Wayne, Pa., for appellant.

1. "On motion and upon such terms as are just, the court may relieve a party ... from a final judgment ... [if] a prior judgment upon which it is based has been reversed or otherwise vacated...." Fed.R.Civ.P. 60(b)(5), Clause 2.

2. Harris was convicted on August 2, 1981 of conspiracy to distribute heroin in violation of 21 U.S.C. § 846, possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1), and conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act by aiding and abetting the investment of heroin proceeds into a commercial real estate venture in violation of 18 U.S.C. § 1962(d).

3. For a general description of the parole guidelines scheme, see *United States ex rel. Forman v. McCall*, 709 F.2d 852, 854 nn. 4 & 5 (3d Cir. 1983). The guidelines in effect at the time of Harris' initial hearing were codified at 28 C.F.R. § 2.20 (1983).

4. Under 18 U.S.C. § 4161, a prisoner sentenced to 12 years' incarceration "whose record of conduct shows that he has faithfully observed all the rules and has not been subjected to punishment, shall be entitled to a deduction from the term of his sentence" of ten days for each month. Were Harris to receive this good time credit, the maximum term of his sentence would be reduced by approximately one third, from 144 months to 96 months.

Board of United States Parole Commission (the Commission).[5]

At the time of Harris' initial parole hearing, we had decided in *United States ex rel. Forman v. McCall*, 709 F.2d 852, 862 (3d Cir.1983) (*Forman I*), that the Commission's application of the parole guidelines in effect at the time of the hearing rather than the guidelines in effect at the time of the offense might violate the *ex post facto* clause of the Constitution if the guidelines were considered "laws." We remanded the case to the district court in the Middle District of Pennsylvania for a factual determination "on the fullest possible record" of whether the Commission retained "substantial flexibility" in exercising its discretion in applying the guidelines, which would demonstrate that the guidelines are not "laws." *Id.*

Shortly after his initial parole hearing, Harris sought writs of habeas corpus and mandamus in the Middle District of Pennsylvania,[6] contending, on the basis of *Forman I*, that the Commission's use of the guidelines in effect at the time of Harris' hearing rather than those in effect at the time of his offense constituted an *ex post facto* violation.

By the time Harris had exhausted his administrative remedies, the district court had issued its opinion on remand in *Forman* holding that the guidelines were "laws" within the meaning of the *ex post facto* clause. *United States ex rel. Forman v. McCall*, Civil No. 81–0553 (M.D.Pa. Sept. 14, 1984) (*Forman II*) [Available on

WESTLAW, DCT database]. The Commission appealed that decision.

■ Relying on *Forman II*, the district court in Harris' case ordered the Commission to conduct "a new parole hearing and to employ therein the parole guidelines extant at the time of [Harris'] offense." *Harris v. Martin*, Civil Nos. 84–0823, 84–0840, slip op. at 5–6 (M.D.Pa. Dec. 12, 1984) [Available on WESTLAW, 1984 WL 3205], App. at 30–31. Although the Commission's appeal of *Forman II* was then pending, the Commission did not appeal the December 12, 1984 injunctive judgment in Harris' case. Instead, the Commission complied with the December 12, 1984 order and conducted a new hearing for Harris on February 13, 1985, applying the guidelines existing at the time of Harris' offense. The examiner panel recommended service of 66 months before parole. Ultimately the National Commissioners voted to release Harris after 76 months.[7] Harris then appealed to this court and, finding that the Commission had not abused its discretion, we affirmed the district court. *Harris v. Martin*, 792 F.2d 52 (3d Cir.1986).

In the interim, this court had reversed the district court's decision in *Forman II* and held that the guidelines were not "laws" within the meaning of the *ex post facto* clause. *United States ex rel. Forman v. McCall*, 776 F.2d 1156 (3d Cir. 1985), *cert. denied*, 476 U.S. 1119, 106 S.Ct. 1981, 90 L.Ed.2d 663 (1986) (*Forman III*).[8]

---

**5.** On June 27, 1984, the Regional Commissioner agreed with the recommendation of the examiners, and that recommendation thereby became the effective decision of the Commission. *See* 28 C.F.R. § 2.24 (1983). Commission regulations provided for a two-tiered administrative appeals process. *See* 28 C.F.R. § 2.25–2.26 (1983). On July 30, 1984, Harris appealed the Commission's decision to the Regional Office of the Commission. The Regional Office affirmed the decision on August 21, 1984. Harris then appealed to the National Appeals Board which affirmed the decision on November 20, 1984.

**6.** Harris filed a petition for a writ of habeas corpus under 28 U.S.C. § 2255 on June 15, 1984. *Harris v. Martin*, Civil No. 84–0823. Harris filed a petition for a writ of mandamus under 28 U.S.C. § 1361 on June 20, 1984. *Harris v. United States Parole Commission*, Civil No. 84–0840. Both petitions sought the same relief, and the

two actions were eventually consolidated by the district court. The two petitions will, therefore, hereafter be referred to as a single action.

**7.** In its Notice of Action, the Commission stated that Harris' case may be reopened if the district court's decision in *Forman II* were overturned. This attempted reservation of right cannot enlarge the Commission's rights under Rule 60(b), however, and is not relevant to the issue before us.

**8.** It is not necessary for us to decide in this case the effect of the Supreme Court decision in *Miller v. Florida*, — U.S. —, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987), on our prior decisions in *Forman*. *Miller* held as a matter of law that because the Florida guidelines "create a high hurdle that must be cleared before discretion can be exercised, so that a sentencing judge may

Thereafter, on April 1, 1986, at a point when the district court's December 12, 1984 judgment in Harris' case had been fully complied with and the 76 month decision had become final, the Commission moved the district court for relief from the December 12, 1984 judgment "on the ground that the prior judgment upon which it was predicated, the decision on remand in [*Forman* ] ha[d] been reversed." App. at 9. In light of *Forman III*, the district court granted the Commission's motion, vacated the December 12, 1984 judgment, and reentered judgment for the Commission, thereby permitting the Commission to consider Harris' parole application under the more current guidelines.[9] The district court relied on the "prior judgment" clause of Fed.R.Civ.P. 60(b)(5).[10]

■ Harris appeals from the district court's decision. This court has jurisdiction under 28 U.S.C. § 1291. The standard of review of a district court's grant of relief under Rule 60(b) is abuse of discretion. *See Browder v. Director, Illinois Department of Corrections*, 434 U.S. 257, 263 n. 7, 98 S.Ct. 556, 560 n. 7, 54 L.Ed.2d 521 (1978); *Inmates of Allegheny County Jail v. Wecht*, 754 F.2d 120, 127 (3d Cir. 1985); *Hodge v. Hodge*, 621 F.2d 590, 593 (3d Cir.1980) (per curiam).

## II.

■ Motions under Rule 60(b) "may not generally substitute for an appeal." *Marshall v. Board of Education of Bergenfield, NJ*, 575 F.2d 417, 424 (3d Cir.1978); *see also Ackermann v. United States*, 340 U.S. 193, 198–99, 71 S.Ct. 209, 211–12, 95 L.Ed. 207 (1950); *Kock v. Government of the Virgin Islands*, 811 F.2d 240, 246 (3d Cir.1987); *Page v. Schweiker*, 786 F.2d 150, 154, 158 (3d Cir.1986). Rather, relief under

Rule 60(b) is available only under such circumstances that the " 'overriding interest in the finality and repose of judgments may properly be overcome.' " *Martinez-McBean v. Government of the Virgin Islands*, 562 F.2d 908, 913 (3d Cir.1977) (quoting *Mayberry v. Maroney*, 558 F.2d 1159, 1164 (3d Cir.1977)); *see also Inmates of Allegheny County Jail*, 754 F.2d at 127; *Hodge*, 621 F.2d at 593. For these reasons, the "prior judgment" clause of Rule 60(b)(5) "does not contemplate relief based merely upon precedential evolution." *Mayberry*, 558 F.2d at 1164; *see also* 11 C. Wright & A. Miller, Federal Practice and Procedure § 2863 (1973); Comment, *Federal Rule of Civil Procedure 60(b): Standards for Relief from Judgments Due to Changes in Law*, 43 U.Chi.L.Rev. 646, 652–56 (1976). Its operation "is limited to cases in which the present judgment is based on the prior judgment in the sense of *res judicata* or collateral estoppel." *Marshall*, 575 F.2d at 424 (quoting 11 C. Wright & A. Miller, Federal Practice and Procedure § 2863 (1973)).

We applied these principles in *Marshall v. Board of Education of Bergenfield, NJ*, 575 F.2d 417, 424 (3d Cir.1978), a case that is controlling here. In *Marshall*, Secretary of Labor Marshall had successfully sued the Bergenfield school board during the reign of *Maryland v. Wirtz*, 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968), to enforce compliance with federal wage and hour laws. Judgment had been entered against the board directing future compliance and the payment of $5,570.43 in withheld past wages. The judgment had been affirmed by this court and no effort had been made to seek review from the Supreme Court despite the fact that the controlling issue was then before the Court in *National League of Cities v. Usery*, 426

---

impose a departure sentence only after first finding 'clear and convincing reasons,' " they were "laws" within the meaning of the *ex post facto* clause. *Id.* 107 S.Ct. at 2453–54 (quoting *State v. Mischler*, 488 So.2d 523, 525 (Fla.1986)). The Court distinguished the Florida guidelines from the federal guidelines, despite the similar federal requirement that reasons be given for going outside the parole guidelines. *Id.* 107 S.Ct. at 2453.

**9.** Following the district court's order, the Commission, without a hearing, issued a new notice of action to Harris which reopened his parole decision, voided the previous 76–month parole decision, and continued Harris to expiration.

**10.** *See supra* note 1.

U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). After *Wirtz* was overruled by *National League of Cities*, the board moved under Rule 60(b) for relief from the judgment. The district court granted relief from the prospective operation of the injunction but declined to modify the monetary award. We affirmed, holding that no further relief was authorized by Rules 60(b)(4), 60(b)(5), or 60(b)(6).

We specifically held in *Marshall* that when a party suffers an adverse judgment, an appeal is necessary to preserve his or her rights even when the same issue is currently before the appellate court in another case. 575 F.2d at 424. In the absence of an appeal, the party who has suffered an adverse judgment may secure relief only from the prospective aspects of that judgment in the event it turns out to rest on an erroneous view of the law. *Id.* at 425.

In this case, neither *res judicata* nor collateral estoppel bound the Commission to the *Forman II* result. Since the parties opposing the Commission were different, the only possible basis for preclusion would have been by application of offensive nonmutual collateral estoppel, a doctrine the Supreme Court has held inapplicable in suits against the government. *See United States v. Mendoza*, 464 U.S. 154, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984). Thus, *Forman*'s only role in the *Harris* case was one as precedent. Moreover, like the *Wirtz* case in *Marshall*, *Forman II* was a controlling precedent that was not overturned until after the judgment had been entered and the appeal period had expired. Since the Commission failed to appeal the *Harris* decision, and since the judgment against the Parole Commission in this case had no prospective effect as of the time the Commission filed its motion,[11] *Marshall* dictates that the district court erred in granting Rule 60(b)(5) relief.

The fact that the party who failed to appeal from the adverse judgment in *Harris* was a government agency that was actively litigating the controlling issue in another case does not meaningfully distinguish this case from *Marshall*. While the school board in *Marshall* did not have the opportunity to litigate the controlling issue in another case, and *Marshall* to that extent differs from this case, the distinction is unpersuasive. If the government could overcome the finality of an adverse judgment by continuing to litigate unrelated cases addressing similar issues, then anyone trying to make plans on the basis of having defeated the government in litigation would have to wait until all ongoing cases relied on by the court in entering the judgment have been concluded, a process that in some instances could take years. Nothing can be found in Rule 60 to support the proposition that those who successfully litigate against the government must receive judgments less final than those received by other litigants.

It is true that in *United States v. Mendoza*, 464 U.S. 154, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984), the Supreme Court distinguished between the government and private litigants in refusing to allow the use of an unappealed district court judgment as a basis for a nonmutual, offensive collateral estoppel against the government. But the issue in *Mendoza* was whether the government's failure to appeal an adverse district court judgment would redound to the benefit of a litigant in a subsequent case. The Court was careful to point out that its holding took nothing away from the finality of the judgment as between the parties to the original suit:

> The Government of course may not now undo the consequences of its decision not to appeal the District Court judgment in the [original] case; it is bound by that judgment under the principles of res judi-

---

**11.** The Commission does not contend that the district court's December 12, 1984 judgment had prospective effect at the time of the filing of the Commission's Rule 60(b) motion. That judgment had been fully complied with before that filing, and although Harris has not yet completed 76 months of service, the 76 month decision was in effect by authority of the Commission's regulations, not by authority of the court's judgment. Consistent with that fact, the 76 month decision remains subject to revision by the Commission pursuant to its regulations to the same extent, if any, as any other release date established after an initial hearing.

cata. But we now hold that it is not further bound in a case involving a litigant who was not a party to the earlier litigation.

464 U.S. at 162, 104 S.Ct. at 573. Similarly, the Commission is bound by its decision not to appeal *Harris.*

Moreover, the concern in *Mendoza* was to allow the government freedom to pursue only those appeals it chooses to pursue, taking into account political and economic considerations prevailing at the time. Allowing nonmutual offensive collateral estoppel against the government would force the government to appeal all adverse decisions, including those cases it did not want to appeal for political or economic reasons, "in order to avoid foreclosing further review." *Id.* at 161, 104 S.Ct. at 573. In *Harris,* by contrast, the Commission wanted the possible benefits of an appeal, but wanted its appeal in *Forman* to substitute for an appeal in *Harris.* Requiring the government to appeal in all cases where the potential benefits would, in its judgment, justify the cost, forces the government to make precisely the kinds of economic and political determinations favored by *Mendoza.*

Finally, an appeal in Harris' case would not have involved any substantial effort for the Commission or the courts. If the Commission had filed an appeal and had asked for a stay of the appeal pending the *Forman III* decision, it would in all likelihood have received a stay with very little investment of Commission or judicial resources. In any event, if the saving of the minimal effort required to file an appeal and secure a stay pending disposition of *Forman II* were sufficient to excuse an appeal in the *Harris* case, the saving of the effort required to seek Supreme Court review would have excused the failure to take that step in *Marshall.*[12]

### III.

■ The finality of judgments is a cornerstone of our judicial system. While judgments are subject to being opened and retroactively modified in certain extraordinary situations where justice demands, a change in precedent is not one of those extraordinary circumstances. Because there is no basis in the text of Rule 60 for affording relief in the situation before us and because affording relief would result in undesirable uncertainty in the law of judgments, we will reverse and remand to the district court with instructions to deny the Commission's motion.

SLOVITER, Circuit Judge, dissenting.

If this case involved only the issue whether a reversal of the precedent of an unrelated case can serve as the basis of a Rule 60(b)(5) motion, then the majority's conclusion would be unremarkable. But the procedural history of this action and the record before us establish that the district court always considered that Harris' right to be evaluated under the more favorable parole guidelines was inextricably interwoven with the *Forman* litigation that was winding its way up to and back from this court several times. Because the Parole Commission undertook, for Harris' benefit, to follow this court's intermediate ruling in *Forman I* rather than unnecessarily duplicating proceedings on an issue which it was actively litigating, the majority holds that this court's *Forman III* decision cannot be applied to Harris. I do not believe that Rule 60(b)(5) should be interpreted so narrowly as to mandate this result.

Counsel and the court continuously treated the *Harris* and *Forman* cases, both of which were being litigated in the same district court at about the same time, as intertwined. Harris' original petitions for writs of habeas corpus and mandamus filed in the Middle District of Pennsylvania expressly relied on this court's decision in *Forman I* for his claim that the Commission's use of the guidelines in effect at the time of Harris' hearing, rather than those in effect at the time of his offense, constituted an *ex post facto* violation.

---

**12.** Although this court in *Marshall* rejected the school board's request to withhold decision pending the outcome of *National League of Cities,* we noted that "[w]here defendants had appealed such decisions by filing a petition for certiorari, the Supreme Court granted their petition, vacated the lower court judgment and remanded their cases for reconsideration in light of *National League.*" 575 F.2d at 420 n. 10.

Similarly, in its opinion in support of its December 12, 1984 order requiring redetermination of Harris' parole, the district court referred to the Commission's "refusal ... to follow the law as it now stands relative to which standards must be used to determine when a given inmate becomes eligible for parole." *Harris v. Martin*, Civil No. 84–0823, slip op. at 2 (M.D.Pa. Dec. 12, 1984), App. at 28. [Available on WESTLAW, 1984 WL 3205]. This law, the court stated, "is set out in *United States ex rel. Forman v. McCall*, M.D.Pa. Civil No. 81–0553, a decision rendered by this Court on September 14, 1984." *Id.*, App. at 28. The court reprimanded the Commission for its failure to follow that law, stating:

> We would remind the [Commission] that the law provides otherwise until such time as our decision in *Forman* is reversed. It is a familiar principle that "... it has become clear in the federal courts that *res judicata* ordinarily attaches to a final lower court judgment even though an appeal has been taken and remains undecided."

*Id.* at 3 (quoting C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction § 4427 at 270 (1981)), App. at 29. "In accord with this concept," the court issued its order requiring a new hearing for Harris. *Id.*, App. at 29.

Thus, the district court's December 12, 1984 judgment was clearly based on the court's prior judgment in *Forman* within the meaning of Rule 60(b)(5). *Forman* was not relied on solely as precedential support, as the majority states. Rather, the district court relied on *Forman* as creating the cause of action asserted by Harris, namely a cause of action based on the *ex post facto* clause as precluding retroactive application of the guidelines. In fact, *Forman* was the sole basis for the court's decision in *Harris*.

Although the district court may have erred in believing, as it stated, that its *Forman* decision had a *"res judicata"* effect on Harris' case, its statement is further evidence that it was giving its prior decision in *Forman* more weight than mere legal precedent in its decision in *Harris* and indeed was relying on *Forman* as a "prior judgment." Our reversal of *For-*

*man II* in effect removed the sole basis for that court's December 12, 1984 judgment.

Concededly, the Commission did not appeal the district court's December 12, 1984 order requiring it to redetermine Harris' parole eligibility date in conformance with *Forman II*. However, such an appeal would have been duplicative. The exact issue presented in *Harris* was before this court on the Commission's appeal of *Forman II* where the district court had held the guidelines were "laws" within the meaning of the *ex post facto* clause. It was apparent that our decision when announced would bind the district courts and the Commission within this circuit.

In such circumstances, there is no sound policy basis for requiring the Commission to appeal or seek a stay in every intermediate decision entered during the pendency of its own appeal. Such a requirement would create a backlog for the Commission of uncompleted and uncompletable parole decisions, delay parole determinations for any inmates whose hearings were put off pending the appellate decision, and clog the courts with essentially meaningless paperwork. Instead of appealing, the Commission proceeded to conduct a new hearing for Harris, at the same time explicitly advising him in its notice of action that his case might be reopened if the district court's decision in *Forman* is overturned. When Harris appealed his new parole release date to this court we found that the Commission had not abused its discretion, and expressly noted the Commission's reservation since by then *Forman III* had been announced. *Harris v. Martin*, 792 F.2d 52 (3d Cir.1986).

The Commission's action in this case was much preferable than an unnecessary appeal, which as the majority notes would have undoubtedly resulted in a stay of further action. This is thus not a case like *Ackermann v. United States*, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950), relied on in *Marshall v. Board of Education of Bergenfield, N.J.*, 575 F.2d 417, 424 (3d Cir. 1978), where the party's failure to appeal represented a "calculated and deliberate" risk based on a belief that the appeal would not "prove to be worth what [the prospective appellant] thought was a required sac-

rifice." 340 U.S. at 198, 71 S.Ct. at 211. The Commission's decision not to appeal but to comply with the district court's directive to redetermine Harris' parole status until the legal issue was finally resolved by the appeal of *Forman II* not only saved the Commission the effort of an appeal but also served the interests of the courts. Moreover, the failure to appeal did not harm Harris. Rather, his interests were served better by reopening his parole decision than by an appeal. In such special circumstances, the Commission's failure to appeal should not be held against it in its subsequent motion for relief.[1]

Because I see no reason why Harris' parole eligibility should be determined under guidelines which this court has held are inapplicable, I respectfully dissent.[2]

---

1. In *United States v. Mendoza*, 464 U.S. 154, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984), the Court refused to allow the use of an unappealed district court opinion as the basis for application of non-mutual collateral estoppel against the government. At least in part, this decision was based on the different concerns faced by private litigants as compared with the government in determining when to pursue an appeal. Among those concerns, the Court recognized "the limited resources of the Government and the crowded dockets of the courts." *Id.* at 161, 104 S.Ct. at 573. The Court believed that application of non-mutual estoppel against the government would force the government to abandon those prudential concerns and "to appeal every adverse decision in order to avoid foreclosing further review." *Id.* Similar concerns are presented here. To deny the Commission the possibility of relief on the basis of a failure to appeal would lead the Commission to ignore the concerns mentioned by the Court and to pursue duplicative appeals.

2. The majority fails to cite any authority for the proposition in footnote 11 of the majority opinion that a prospective release on parole does not have "prospective application" within the meaning of F.R.Civ.P. 60(b)(5), and its analysis is not convincing. Inexplicably, the Commission has not made an argument based on that clause.